[No. 14039.   Department Two.   October 11, 1917.]

M. G. BENTLEY, *Respondent*, v. WESTERN UNION
TELEGRAPH COMPANY, *Appellant*.[1]

TELEGRAPHS AND TELEPHONES—MISTAKE IN TRANSMISSION—DAMAGES—PROXIMATE CAUSE.  Where, through the mistake of a telegraph company, apples shipped from Oregon to California were delivered to the consignee by the consignor's agent at $1.08 per box, instead of $1.80, in reliance upon an erroneous message, the mistake of the telegraph company was the proximate cause of the consignor's loss, notwithstanding he might have disaffirmed the sale and brought suit in the distant forum by reason of the fact that the consignee must have known of the mistake; and the seller's affirmance of the contract with knowledge of the mistake does not constitute a new contract.

SAME—MISTAKE IN TRANSMISSION—DAMAGES — MITIGATION.  In such a case, it was the duty of the consignor to mitigate his damages by the acceptance of a prompt offer by the consignee to settle for the apples at $1.50 per box.

APPEAL AND ERROR—REVIEW—HARMLESS ERROR—TRIAL.  The offer of immaterial evidence which the jury should have been instructed to disregard is not prejudicial where, upon objection, neither party pressed the matter, and the court made no ruling and paid no attention to it.

ELLIS, C. J., and HOLCOMB, J., dissent in part.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered July 17, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages.  Reversed.

*Gose & Crowe*, for appellant.

*Sharpstein, Smith & Sharpstein*, for respondent.

[1]Reported in 167 Pac. 1127.

FULLERTON, J.—The plaintiff, in October, 1913, shipped from Milton, Oregon, to El Centro, California, a carload of apples, consigned to the Imperial Valley Mercantile Company. A draft was drawn on the latter for the price of the apples at $2 per box, and sent with bill of lading attached through the Milton bank to the First National Bank of El Centro for collection. The mercantile company refused to accept the apples at the price named, but agreed to accept such as graded extra fancy at $1.75 per box, and the balance at $1.25 per box, and telegraphed that offer to plaintiff. In answer, the plaintiff through his agent, the Milton Bank, filed a telegram with defendant directing the bank in El Centro to accept $1.80 per box for the carload. By mistake of defendant the price was made to read $1.08 per box. The El Centro bank delivered the bill of lading to the mercantile company and accepted payment for the apples at the rate of $1.08, instead of the $1.80 demanded by the seller. The error was discovered by the bank within a few hours after it had collected for the apples at the rate of $1.08 per box, and the bank, in making its remittances to plaintiff, gave him a statement of the error. The defendant endeavored to get the mercantile company to pay the difference between $1.08 and $1.80 as the price per box, and the latter agreed to settle on a basis of $1.50 per box. The plaintiff, rather than receive that price, elected to accept the payment of $1.08 per box and bring his action against the defendant for the difference. The case was tried to a jury, which returned a verdict against defendant of $533.05, the full difference, with interest, between the price quoted in the message offered the defendant and the price named in the message as transmitted by it. The defendant appeals, assigning a number of errors whose discussion is grouped under two heads: (1) The error in the telegram was not the proximate cause of the loss, since the addressee must have known that an error had been committed, and no sale was effected by the erroneous

telegram; (2) the loss, in any event, could not exceed the difference between $1.50 per box and $1.80 per box.

It appears from the evidence that both the Oregon and California banks were the agents of respondent in the sale of the apples, but that the California bank, when it received the telegram to sell at $1.08 per box, was in ignorance of the fact that, the day before, the mercantile company had tendered its principal an offer largely in excess of that price. The bank accordingly at once closed the sale, delivering the apples and accepting payment at the erroneous figures named in the telegram. The mercantile company was doubtless aware that it was getting the apples at a lower price through some error, since they were originally priced to it at $2 per box, and it had made a counter offer of $1.75 and $1.25 on the two grades in the shipment, the larger portion of the boxes ranking as the highest grade. The market price of the apples at El Centro was in evidence as being $1.80 per box for extra fancy Oregon apples. Respondent testified that the whole shipment was of this grade. Confirmation of the fact that the purchaser was aware of the mistake in the price quoted by the seller's agent is shown by the fact that he was afterwards willing to pay an additional 42 cents per box, bringing the price up to $1.50 per box for the entire carload.

It is the contention of appellant that, under this state of facts, respondent had the right to disaffirm the sale on account of the mistake, but that, when he confirmed the sale, this was a new contract entered into by him subsequent to the telegram, one not dependent on the transmission of the telegram, and hence his loss was not the proximate result of the appellant's error in transmission. We cannot agree with this deduction of counsel. The apples lay in El Centro awaiting the result of the dickering of the parties as to price. When the seller's agent received a telegram instructing sale at a certain price, it at once closed with the purchaser at that price. This contract was entered into at a mistaken

consideration due to the negligence of appellant. It is true, the contract might have been disaffirmed by promptly bringing suit therefor, but the forum was distant and the subject-matter of a perishable nature, the whole controversy subject to the uncertainty of evidence and the vagary of a jury, and in the end respondent might not have been able to realize an amount equal to that accepted from the purchaser. The natural consequence of the mistake in the telegram, under which delivery was made in ignorance thereof, was the loss of 72 cents per box to respondent. The acceptance of the mistaken price was due wholly to the erroneous telegram, and was the direct result of that error. The contract was made, not by the respondent, but by his agent in reliance on the erroneous message, and sale was made by the agent before respondent was aware of the mistaken telegram. The telegram was the proximate cause of a contract prejudicial to respondent, and to say that the respondent's affirmance of it with knowledge of the mistake constitutes a new contract is not sound. He was merely making the best of a bad contract resulting from the mistaken act of appellant, with a view to holding it responsible. *Reed v. Western Union Tel. Co.*, 135 Mo. 661, 37 S. W. 904, 58 Am. St. 609, 34 L. R. A. 492; *Pepper v. Western Union Tel. Co.*, 87 Tenn. 554, 11 S. W. 783, 10 Am. St. 699, 4 L. R. A. 660. For a somewhat similar case decided by our own court see *Henry v. Western Union Tel. Co.*, 73 Wash. 260, 131 Pac. 812, 46 L. R. A. (N. S.) 412.

We think, however, there is merit in appellant's contention that it was the duty of respondent to minimize his damages, where such a course was readily available to him. The evidence shows that, after the telegram erroneously transmitted by appellant had been acted on to the prejudice of respondent, the purchaser, who had taken advantage of the error, offered to increase his payment for the apples from $1.08 to $1.50 per box. This the respondent refused to accept, relying upon the liability of the telegraph company to

respond for the total discrepancy between the telegram as given and as sent. This offer of the purchaser was promptly made and could have been availed of by respondent prior to his action against the telegraph company. It is a well established rule that one who has a claim against another arising out of the tortious conduct of the latter has a duty to minimize his claim for damages so far as possible. This rule has frequently been applied in like cases to the one before us. *Fererro v. Western Union Tel. Co.*, 9 App. D. C. 455, 35 L. R. A. 548.

"It is the duty of plaintiff on learning of the negligence of the telegraph company to make reasonable efforts to render the resulting damage as light as possible, and he cannot recover damages which by such care and diligence he could have avoided." 37 Cyc. 1757.

citing *Western Union Tel. Co. v. Jeanes*, 88 Tex. 230, 31 S. W. 186; *Western Union Tel. Co. v. Reid*, 83 Ga. 401, 10 S. E. 919; *Postal Tel. Cable Co. v. Schaefer*, 110 Ky. 907, 62 S. W. 1119.

We think that the loss occasioned respondent was the natural and proximate result of the negligence of appellant for which the latter should respond in damages. But we think that it was also the duty of respondent to minimize his damages by the acceptance of the offered increase in price that the evidence shows the purchaser was willing to pay.

Among the errors assigned is that the attorney for respondent, at the opening of the trial, read an assignment by respondent to appellant of any claim which the former might have against the Imperial Valley Mercantile Company arising out of its purchase of the apples pursuant to the erroneous telegram. The respondent asked that the assignment be made a part of the record, but appellant objected that the offer was incompetent, irrelevant and immaterial, and asked the court to instruct the jury not to consider it. The court made no ruling. It is urged that the mere offer had a tendency to prejudice the jury adversely against appellant.

While the offer was immaterial in the case and the court should have properly instructed the jury to disregard it, we think the error was practically harmless. The failure of either party to further press or oppose it, and of the court to pay any attention to it, must have apprised the jury that it was meant as nothing more than a tentative offer which it was not incumbent on appellant to accept.

The judgment will be reversed, with instructions to modify it as indicated in the opinion.

PARKER and MOUNT, JJ., concur.

HOLCOMB, J. (dissenting)—I am obliged to dissent from this disposition of this case. It is illogical and erroneous upon any theory. If the judgment is not to be affirmed upon the facts and the law in full, it should be only upon the facts that the Imperial Valley Mercantile Company knew, or had every reason to believe, that the price stated in the telegram as delivered to it was not the true price and acted upon it in bad faith, and that no contract was made between the respondent and it, and reversed. Where oranges worth $2.60 per box were quoted by error in transmitting the message at $1.60 per box, the court in *Germain Fruit Co. v. Western Union Tel. Co.*, 137 Cal. 598, 70 Pac. 658, 59 L. R. A. 575, held that the difference in price was sufficient to put the receiver on inquiry as to the correctness of the message; that, when the receiver received them at this price, it did so intending to defraud the seller; that, in such case, the seller had a good cause of action against the buyer and could not waive it, permit the buyer to get away with its fraudulent advantages, and recover the entire loss from the telegraph company. But I do not approve that case. To do so would be to compel the seller to go to a distant jurisdiction in such case as this, waiving his remedy against an accessible and responsible concern, primarily liable, and resort to all the hazards of recovering his loss. And the majority disapprove that doctrine and sustain the liability of the appellant here.

There was no conflict in evidence in this case that the telegram was negligently altered in transmission and so delivered, that, acting upon the misstated instructions contained in it as delivered, the agent of respondent and the buyer completed the transaction immediately prior to the discovery of the mistake. The apples were immediately delivered and the money collected at the mistaken price.

After discovering the error in transmitting the message, the telegraph company attempted to induce the buyer to adjust the matter by paying the difference between $1.08 per box and $1.80 per box. The buyer, for a settlement in full, made a tentative offer to the effect that it would be willing to pay $1.50 per box. There was no definite offer, and no tender then or thereafter made to that effect.

Had respondent acted upon that suggestion and agreed to accept the $1.50 per box, it would have been equivalent to abandoning the previous offer at $1.80 per box, making a new contract for $1.50 per box, settling at that price, and forever waiving his claim and right to recover his entire loss from any source. And we certainly would so hold. Had the negligent telegraph company given the respondent the opportunity of accepting from the buyer such portion of the loss as the buyer was willing to stand, to minimize the damages to it, a different condition would be presented. It is not contested here that the apples were actually worth, at a fair market price, $1.80 per box. Respondent is entitled to recover from the source of his damage his actual loss. That loss is the difference between the price received by him on the completed sale and the fair market value of the apples. In my opinion, the telegraph company by procuring, and the buyer by making, an *ex post facto* offer, cannot deprive plaintiff of any part of his actual damages.

The principal case cited by the majority, *Fererro v. Western Union Tel Co.*, is not analogous. In that case, the *receiver* of a negligently altered message, upon discovering the real price quoted, refused to accept delivery of the goods.

It was held that: the measure of damages recoverable by one who gets a telegram, for a mistake in understanding the price in an offer to sell goods, is limited to such difference in price, excluding any loss of profits on a contract of resale made on the faith of the telegram, but not carried out because he had himself refused to receive the goods, etc.

After the goods were delivered to the buyer by respond-ent's agent, on the faith of the altered message, and the price received, there was nothing respondent could do to prevent further loss or damage, or, as is stated, minimize his damages; and he did nothing to augment them.

Upon the facts in this case, I am convinced the case was properly submitted to the jury, and that the verdict and judgment should be affirmed in entirety.

ELLIS, C. J., concurs with HOLCOMB, J.