WESTERN UNION TELEGRAPH COMPANY *v.* CITIZENS' BANK
OF HARRISON.

Opinion delivered June 28, 1920.

1.  TELEGRAPHS AND TELEPHONES—AUTHORITY TO SEND TELEGRAM.—In the absence of notice of facts or circumstances which would awaken inquiry and arouse suspicion in the mind of a person of ordinary prudence in a like situation regarding the authority of the person who presents a message for transmission to send it, the exercise by a telegraph company of reasonable care to receive and transmit genuine and authorized messages only does not require it to investigate or ascertain the identity or authority of one who tenders a message for transmission, whether it is in writing, or spoken directly to the operator, or communicated to him by telephone.

2.  SAME—BURDEN OF PROOF AS TO FORGED MESSAGE.—In an action against a telegraph company for damages caused by an unauthorized message, plaintiffs, by proving its delivery to them, and their loss resulting from reliance and action upon it without negligence on their part, and that no such message was authorized by the purported sender, establish a *prima facie* case against the telegraph company, and the burden of proof was cast upon it to show that it was not guilty of negligence in the premises.

3.  SAME—NEGLIGENCE IN RECEIVING MESSAGE.—Where a telegraph operator had been in the habit of receiving telegraphic messages by telephone, and did receive an unauthorized message in the absence of any suspicious circumstances, it was error not to direct a verdict for the telegraph company.

Appeal from Boone Circuit Court; *J. M. Shinn,* Judge; reversed.

STATEMENT OF FACTS.

The Citizens' Bank of Harrison, Arkansas, and W. S. Pettit, sued the Western Union Telegraph Company for damages caused by its receipt and delivery of an unauthorized message. On September 4, 1917, an attorney went to W. S. Pettit, the cashier of the Citizens' Bank of Harrison, Arkansas, with regard to having the bank sign

a bond to replevin a car load of junk at Crickett, Arkansas. The cashier told the attorney that he would have to have instructions from someone to protect the bank and himself. The attorney replied that he would have the Ozark Savings Bank of Ozark, Missouri, call him up and authorize him to make the bond. Later on in the day someone representing himself to be an official of the Ozark Savings Bank called up the cashier of the Citizens' Bank at Harrison and authorized his bank to sign the bond as surety and agreed to protect it against any loss. The cashier of the Citizens' Bank answered over the telephone that he would require a letter or telegram confirming the authority given over the telephone. On the next day he received a telegraph message signed by the Ozark Savings Bank directing him or his bank to sign the replevin bond and agreeing to protect them against all damages on account thereof. Pettit, at the request of his bank, signed the replevin bond as surety for the plaintiff. On the final hearing of the replevin suit, judgment was rendered against the plaintiff and against Pettit as surety on the replevin bond in the sum of $883.07 with the accrued interest. The Citizens' Bank of Harrison, having requested and authorized Pettit to sign the replevin bond, paid off and discharged the judgment. It turned out that the telegraph message, purporting to have been signed by the Ozark Savings Bank authorizing the Citizens' Bank to sign the replevin bond and agreeing to protect it against costs and damages, was not sent by that bank, but was a forgery.

The operator of the Western Union Telegraph Company during the month of September, 1917, at Ozark, Missouri, was a witness for the defendant. According to his testimony the telegraph message, purporting to have been signed by the Ozark Savings Bank and directed to the Citizens' Bank of Harrison, Arkansas, in which the former bank authorized the latter to sign a certain replevin bond and agreeing to protect it against costs and damages, was in his handwriting. The railroad station

and the telegraph office of the defendant were about a mile from the business section of the town of Ozark, Missouri, in which the Ozark Savings Bank was situated. At that time it was the practice to deliver messages by telephone from the business section of the town to the defendant's telegraph office at the railroad station to be there transmitted by the defendant over its lines to the point of destination. An additional charge of ten cents was made when the message was received at the railroad station over the telephone. It was the practice of the Ozark Savings Bank at that time to send messages over the lines of the defendant by calling up the defendant's office over the telephone and dictating the message to the operator. The operator would write down the dictated message and then send it over the defendant's wire. If the message in question had been sent in any other way it would have been written in the handwriting of some other person than that of the telegraph operator. If the message in question had been delivered by a person at the railroad station to the telegraph operator there would have been a mark on the telegram to indicate that the charges were paid at the station. No such mark was on the telegram in question. The absence of such a mark indicates that the message was not paid for at the railroad station, but the number checking the amount indicates that the message was sent paid, and the absence of the check, or charge mark, indicates that it was sent to the office of the defendant by telephone. The telegraph operator had only been in the service of the company at Ozark since the 7th of July, 1917, and had not become familiar with the voices of any of the officials of the bank who had been accustomed to telephone messages to him. There were no facts or circumstances in connection with the transaction to arouse the suspicion of the operator that the message was not genuine. The operator would not have sent the message if he had believed, or had any reason to believe, that the message was not being sent by the Ozark Savings Bank.

The trial of the case was had on the 16th day of January, 1920, and the operator admitted that he had no distinct personal recollection of the message in question. We quote from the record of the testimony of the telegraph operator the following:

"Q.   Mr. Lemmons, I believe you stated on cross-examination that you remember very little in fact about the message?

"A.   Yes, sir.

"Q.   If there had been any circumstances or any fact calculated to arouse your suspicion at the time, you would have remembered it, would you?

"A.   Certainly and would probably have made an investigation of it.

"Q.   The party sending the message over the telephone stated it was the Ozark Savings Bank, did he not?

"A.   Yes, sir; I would not have signed it there if he had not.

"Q.   (*Col. Crump.*)   Would you have known that telephone or telegraphic message had been ever sent had you not seen it here at this time?

"A.   I doubt it very much.

"*Mr. Hudgins:*   We offer the original telegram in evidence."

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Francis R. Stark* of New York City and *Rose, Hemingway, Cantrell & Loughborough* and *A. W. Dobyns,* for appellant.

1.   The telegraph company was not liable for damages resulting by its delivery of a telegram fraudulently telephoned to its agent in the absence of notice of facts or suspicious circumstances to awaken inquiry or arouse suspicion in the mind of a person of ordinary prudence and intelligence regarding the authority of the party who sends it.   All the authorities agree there is no liability, and the court erred in not directing a verdict for defend-

ant.   141 Fed. 522; 61 Ala. 158; 32 Am. Rep. 1; 142 Pac. 156.

Telegraph companies are not insurers of the correctness of messages or of their safe and correct delivery, and are bound to use only ordinary care and diligence. 41 Ark. 79; 50 *Id.* 434; 100 *Id.* 7; 108 *Id.* 8. Under these decisions appellant was not an insurer of the genuineness of the message sued on, and was bound to use only reasonable care. The peremptory instruction should have been given.

*George J. Crump,* for appellees; *John I. Worthington,* of counsel.

The court properly instructed the jury, the instructions clearly state the law. The jury were properly left to determine whether the agent of the company used ordinary care and prudence in determining whether or not the message was sent by the Ozark Savings Bank or not. If it did not, as the within shows, the judgment is right and should be affirmed. 109 Fed. 377; 132 Ark. 335; 141 *Id.* 533. On the whole case, the question of negligence was properly submitted to the jury, and their verdict is conclusive.

Hart, J. (after stating the facts). With regard to the duties of telegraph companies in the case of a forged message, it is generally held that, in the absence of notice of facts or circumstances which would awaken inquiry and arouse suspicion in the mind of a person of ordinary prudence in a like situation regarding the authority of the person who presents a message for transmission to send it, the exercise by a telegraph company of reasonable care to receive and transmit genuine and authorized messages only does not require it to investigate or ascertain the identity or authority to send it of the person who tenders a message for transmission, whether it is in writing or spoken directly to the operator, or is communicated to him by telephone. 26 R. C. L., p. 557, § 62. This is conceded to be the law by both

parties, and the court instructed the jury in accordance therewith.

It is insisted, however, by the defendant that, under the evidence given by its operator, the court should have directed a verdict in its favor. On the other hand, the judgment is sought to be upheld on the ground that the burden of proof was upon the defendant, and for that reason the question was properly a jury one, and the court did not err in submitting the issue of defendant's negligence to the jury.

When the plaintiffs proved the delivery of the message, the loss resulting from reliance and action on it, without negligence on their part, they made out a case against the telegraph company, and the burden of proof was cast upon it to show that it was not guilty of negligence in the premises. The reason is that the means of showing that there was no negligence on the part of the telegraph company was within the exclusive possession of the company. To require the plaintiff to show negligence after having made out a *prima facie* case would in many cases enable the company to evade a just liability. *Western Union Tel. Co.* v. *Short,* 53 Ark. 434, and *Little Rock & Fort Smith Tel. Co.* v. *Davis,* 41 Ark. 79.

Under a state of facts in all essential respects similar to the case at bar the United States Circuit Court of Appeals, Eighth Circuit, in *Bank of Havelock* v. *Western Union Tel. Co.,* 141 Fed. Rep. 522, 5 Ann. Cas. 515, held that a verdict was properly directed in favor of the telegraph company. Judge Sanborn in discussing the question said:

"The great purpose of telegraphy is the quick transmission of messages from senders to addressees. In the conduct of this business all other considerations are subordinate. The telephone furnishes the most speedy and convenient means of communicating these messages from the senders to the offices of the telegraph companies, and from these offices to the addressees of the messages. For this reason its use for this purpose has become general

throughout the land. The persons who operate the telephones are not generally the business men or officers of corporations in whom the authority to send the telegrams is vested in the first instance, but young men and women to whom this authority is delegated by parol, frequently through several intermediaries. An inquiry and decision by telegraph operators of the identity and authority of those who speak the messages over the telephone are utterly incompatible with their rapid receipt and transmission, and a new duty to investigate and determine this authority before sending the messages, a duty which would be so deleterious to the prime object of the business of telegraphy, ought not to be imposed without great hesitation. It is true that the use of new inventions often creates new rights and imposes new duties. But the duty was never imposed upon telegraph companies before the use of telephones to ascertain the genuineness of the signatures to written messages, and the authority of those who presented them to direct their transmission, and no reason occurs to us why a duty of this nature should now be imposed upon them in receiving messages by telephone.''

It appears from the record in the present case that the telegraph company had its office at the railroad station about one mile from the business section of the town and was in the habit of receiving messages over the telephone from its customers to be transmitted over the wires of the company to the point of destination. The Ozark Savings Bank was one of its customers, and was in the habit of sending messages in that way. When messages were telephoned from the business part of the town in which the Ozark Savings Bank was situated to the Ozark station, an additional charge of ten cents was made. When a message was delivered to the company at the station, a mark was placed on it to indicate the fact, and the absence of such a mark indicated that the message was sent in by telephone to the station. The trial was had in the circuit court nearly two years after the

transaction in question. The operator testified that he did not have much personal recollection about the matter. The original telegram was introduced in evidence and was in the operator's handwriting. This indicated that he had received it over the telephone. The absence of a charge mark from the message also indicated that it was received over the telephone.

It is insisted that this testimony should not be considered as overcoming the *prima facie* case of negligence because the operator had but little personal recollection of the matter. We can not agree with counsel in this contention. It was the duty of the operator to reduce to writing messages sent in over the telephone for transmission by the company. This the operator did in the present case. His duties also required him to put a mark on messages delivered at the station, so that the extra charge of ten cents for telephone transmission would not be made. The absence of such a mark showed that the message had been sent in by telephone and that the ten cents additional should be charged against the sender of the message.

The operator testified that he had only been in the service of the company at Ozark, Missouri, a short time before the message in question was sent and that he was not familiar with the voice of the cashier of the bank or other officer who was in the habit of sending messages over the telephone for transmission over the wires of the telegraph company. The operator stated that, if there had been any circumstance calculated to have aroused his suspicions at the time that the message was not genuine, he would have remembered it and would probably have made an investigation of it. He testified that the party sending the message stated that it was from the Ozark Savings Bank, and that, if he had not done so, he would not have received the message for transmission to the point of destination. This testimony is clear and consistent in itself and shows an entire absence of suspicious facts or circumstances which would require ac-

tion on the part of the telegraph company. While the operator did not recollect in detail the transaction in question, he stated positively that if there had been any suspicious circumstances attending the transaction he would have remembered that fact. This is natural. He could not be expected to carry in his mind all the details relating to the receipt and transmission of every message, but, knowing that it was his duty to investigate any case where the circumstances were calculated to arouse a suspicion that the message was not genuine, he could carry in his mind that he always performed that duty. The question was not whether he made an investigation, but whether anything happened in connection with the transaction that required him to make an investigation. The operator had been in the habit of receiving such messages from the officers of the bank, and, in the absence of suspicious facts or circumstances in connection with the matter, the telegraph company was not guilty of any negligence and was not liable to the plaintiffs. There is nothing in the record to indicate that the message was not genuine. The business of transmitting messages over telephone and telegraph wires is very important, and good faith and diligence in the discharge of the duties of such companies are essential to the interest of the public. Sound public policy, however, forbids any recovery in cases of this sort where there are no facts or circumstances in the record calculated to arouse the suspicion of the operator that the message was not genuine. There is nothing in the case of *Western Union Tel. Co.* v. *Totten,* 141 Fed. 533, that cast any doubt upon the rule laid down. On the other hand, the opinion in that case was also written by Judge Sanborn and was delivered on the same day as the opinion above referred to. In the Totten case Barnes had been in the habit of sending messages to the telegraph company by telephone relative to the business of the bank. The message in question stated that the bank would honor the drafts of Barnes for three cars of stock. The evidence

was conflicting upon the question of whether the bankers were informed by the telegraph company before these messages were sent that Barnes was sending telegrams in the name of the bank. The operator knew that Barnes had been sending messages in the name of the bank about the business of Barnes, but the testimony was conflicting as to whether the bank knew that fact. For that reason the court held that the question of whether or not the operator exercised reasonable care to receive and transmit a genuine message was for the jury.

It follows that the court erred in not directing a verdict for the defendant and for that error the judgment must be reversed and the cause remanded for a new trial.

Humphreys, J. (dissenting). Proof that the telegram was not authorized by the Ozark Savings Bank made a *prima facie* case for appellee. The burden was thereby cast upon appellant to show that the message was received in the due and ordinary course of business, unattended by any fact or circumstance which might have put it on guard or apprised it of the unauthenticity of the telegram. This burden can not be met by surmise or circumstances not leading to a conclusion certain. The witness produced to overcome the burden had no personal recollection of receiving the message, much less the circumstances attending its reception. He surmises that it came to him over the telephone, because in his handwriting and without having a mark on it indicating that it was delivered to him at the station by the sender. For aught that is known, the sender was present and requested the witness to write the message, under circumstances which would have put a prudent man upon notice that something was wrong. The witness may have complied with the request, and, in the hurry, omitted to make the mark on it customarily made on messages received at the office when delivered by the sender in person. The circumstances detailed by the witness do not lead to a definite and certain conclusion that the telegram

was delivered to appellant without attendant circumstances which might have put a prudent business man upon notice that it was a forgery; or that the message was received over the telephone at all. Just as well abolish the rule of *prima facie* case made as to permit it to be swept away by surmises or circumstances not leading to a definite or certain conclusion. It will not do to lay down a rule which will permit one to guess himself out of a liability fixed by legal presumption. In my humble judgment, that is the effect of the rule laid down in this case by the majority.