## WESTERN UNION TELEGRAPH CO. v. FIRST STATE BANK & TRUST CO.
### (No. 1891.)

(Court of Civil Appeals of Texas. Amarillo. April 5, 1922. Rehearing Denied May 3, 1922.)

**I. Telegraphs and telephones ⬅66(I)—Proof of delivery of false telegram prima facie evidence of negligence.**

In an action by a bank against a telegraph company for money paid out because of a forged message delivered by defendant, proof that defendant delivered the message to plaintiff made a prima facie case of negligence calling for evidence from defendant to exculpate itself.

**2. Telegraphs and telephones ⬅66(4)—Evidence held to show forged telegram primary cause of payment of check.**

In an action by a bank against a telegraph company, for money paid out because of a false message delivered by defendant, evidence held sufficient to show that the delivery of the telegram was the primary cause of payment of a check payment on which had been stopped by the maker.

**3. Telegraphs and telephones ⬅65(6)—Failure of proof of allegation as to person delivering forged message to company not fatal.**

In an action by a bank against a telegraph company and the payee of a check paid on the faith of forged message, where the petition alleged that the payee forged and delivered the message to the company, failure to prove this allegation was not fatal to plaintiff's recovery against the company.

**4. Telegraphs and telephones ⬅64—Drawer of check held not necessary party to action by bank for delivering forged message causing payment.**

In an action by a bank against a telegraph company for delivering a forged message causing the bank to pay a check, payment of which had been ordered stopped by the maker, failure to require the maker of the check to be made a party was not error, where no relief against the maker was asked.

**5. Telegraphs and telephones ⬅65(6)—Evidence of maker's indebtedness to payee of check paid on faith of forged message held inadmissible under issues.**

In an action by a bank against a telegraph company for delivering a forged message caus-

ing the bank to pay out money on a check, payment of which had been ordered stopped, defendant's evidence that the maker of the check was indebted to the payee on a contract was inadmissible; defendant not having pleaded the necessary facts in mitigation of damages, nor asked for subrogation to the right of the payee against the maker of the check.

**6. Subrogation ☞41(5)—Subrogation must be pleaded.**

If subrogation is invoked, it must be pleaded.

**7. Telegraphs and telephones ☞66(2)—Evidence that plaintiff bank, paying check on faith of forged message, charged amount to maker's account held inadmissible.**

In an action by a bank against a telegraph company for delivering to the bank a forged message, causing it to pay money on a check payment of which had been ordered stopped, evidence that the bank, after paying the check, charged it to the account of the maker, was inadmissible, in absence of evidence that this was done with the consent of the maker.

**8. Telegraphs and telephones ☞26¾, New, vol. 7A Key-No. Series—Judgment on service of summons on federal agents held not void.**

In an action against a telegraph company for negligence, where defendant pleaded in abatement that its business was taken under control of the government after the cause of action accrued, and afterward filed an amended answer, which did not mention the plea, and the case was tried without insisting on plea, the judgment was not void because the service of summons was on agents acting for it while under government control.

**9. Telegraphs and telephones ☞66(2)—Evidence held admissible to show deception by forged telegram.**

In an action by a bank against a telegraph company for sending a forged message causing the bank to pay a check, payment of which had been stopped, admission of testimony by the bank's officer that he paid the check on belief that the maker of the check sent the telegram was not error, since it showed that the bank acted in good faith and was actually deceived.

**10. Witnesses ☞374(2)—Exclusion of contract showing interest of witness in suit held error.**

In an action by a bank against a telegraph company for sending a false telegram by which the bank was induced to pay a check, payment on which had been stopped, in which the maker of the check was a witness, exclusion of a contract by the maker of the check in reference to payment of the money represented by it, which recited that the bank had been threatening to sue the maker of the check, and providing that if she was not sued she would pay the amount of the check if recovery could not be had against the telegraph company, was error, since it tended to show the interest of the witness in the litigation.

**11. Telegraphs and telephones ☞73(1)—Question of participation in sending a forged message held for jury.**

In an action by a bank against a telegraph company and the payee of a check paid by the bank on the faith of a forged telegram sent after the drawer had stopped payment, evidence that the payee sent the forged message *held* sufficient to go to the jury.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by the First State Bank & Trust Company against the Western Union Telegraph Company and another. From judgment for plaintiff against the named defendant and in favor of the other defendant the named defendant appeals. Reversed as to both defendants and remanded.

Veale & Lumpkin, of Amarillo, for appellant.

Hoover, Hoover & Willis, of Canadian, and Carl Gilliland, of Hereford, for appellees.

BOYCE, J. This is an action for damages, brought by the First State Bank & Trust Company of Hereford, Tex., against the Western Union Telegraph Company and John Young. Plaintiff alleged that John Young caused to be delivered to the telegraph company for transmission and delivery to the plaintiff bank a forged telegram, bearing the signature of Donna Gardner. That the telegraph company negligently accepted said telegram, and thereafter delivered it to the bank, causing the bank to pay out, to its ultimate loss, certain funds on account of the said Donna Gardner. A trial resulted in judgment in favor of John Young, on instructions by the trial court to the jury that the evidence was insufficient to warrant the submission of an issue as to his forgery of the message and in judgment in favor of the bank against the telegraph company, on findings of the jury that the telegram, purporting to be signed by Donna Gardner, was forged; that the telegraph company was guilty of negligence in receiving and transmitting such message, and that the bank on the faith thereof had paid out funds on account of said Donna Gardner.

On May 30, 1918, Donna Gardner made and delivered to John Young her check for $2,500, on the plaintiff bank. Before the check was presented for payment she instructed the bank not to pay it. Thereafter, on June 2d the telegraph company delivered to the bank the following telegram:

"Amarillo, Texas, 6/2/1918.

"To First State Bank & Trust Co.. Hereford, Texas. You can pay twenty-five hundred check to John Young.     Donna Gardner."

Thereafter John Young presented the check for payment, and the bank paid it. Such de-

tails of the evidence as are necessary to be considered will be stated in connection with the various propositions discussed.

[1] Under the first and second propositions appellant contends that no liability against it was shown because there was no evidence offered as to the circumstances surrounding the receipt by it of the telegram. The telegraph company produced on the trial the original message, delived to its office at Amarillo. This message was typewritten, signature as well as body. No evidence was introduced by either party as to any of the circumstances of its delivery to the telegraph company. Plaintiff offered evidence to the effect that Donna Gardner did not deliver it or authorize any one to send such a message for her. Proof of the fact that the telegraph company delivered to the plaintiff a false message made a prima facie case of negligence against the telegraph company, "calling for evidence from the defendant to exculpate itself." Western Union Telegraph Co. v. Uvalde National Bank, 97 Tex. 219, 77 S. W. 606, 65 L. R. A. 805, 1 Ann. Cas. 573; Western Union Telegraph Co. v. Citizens' Bank, 144 Ark. 577, 223 S. W. 29, 10 A. L. R. 822; State Bank of Commerce v. Western Union Telegraph Co., 19 N. M. 211, 142 Pac. 156, L: R. A. 1915A, 126. The propositions urged by appellant are thus answered by the Supreme Court in the case above cited:

"If it be urged that the burden was on plaintiff to show negligence, the answer is that it did show that the company was apparently in the wrong in delivering a false telegram. The defendant, charged with the duty which, as we have seen, rested upon it, should have shown, not only that it was ignorant of the falsity of the message, but that it was justifiably ignorant. It could not establish this without showing that the imposition upon it occurred notwithstanding the use of proper care on its part. The character, necessities, and limitations of its business, as well as its regulations and modes of conducting it, were best known to it. In the arrangement and conduct of this business it commands the best skill that can be had, and it is peculiarly in its power to develop and explain all that should be known to court and jury in the determination of the questions like that before us. Ryan v. M., K. & T. Ry. Co. [65 Texas, 13]."

This language, as well as reference to the authority cited by the court in that connection, clearly shows that the court applied the rule of prima facie negligence, frequently applied by our courts to other situations where the defendant has special knowledge of the facts which are pertinent to be considered in determining whether there was any fault on his part, advisedly and not inadvertently, as appellant's counsel argues.

[2] The third and fourth propositions are to the effect that there is no liability for any negligence in the delivering of the forged message because the bank was not induced thereby to pay the $2,500 check, but such action was the result of reliance on representations of John Young. The evidence shows that the check had been in the possession of a bank in Amarillo, and inquiry had been made by such bank as to whether the check was good. On receipt of the telegram the plaintiff bank had wired the Amarillo bank that it would pay the check, and the plaintiff was expecting that the check would be presented for payment by the Amarillo bank, and the officers of the plaintiff bank were surprised when the check was presented by John Young in person. Young made an explanation, and in the course thereof said something about Miss Gardner "being in his office [in Amarillo] and going down and sending the message." The officer handling the business of the bank testified that at the time he paid the check he believed that Miss Gardner sent the telegram authorizing its payment. This officer later wrote Young a letter, in which this statement is made:

"You then got check, came to Hereford on June 4th and presented it for payment and stated to me that Miss Gardner had sent the telegram stating, 'You can pay twenty-five hundred dollar check to John Young,' and on that statement I, acting for the bank, paid the check."

We think the evidence sufficiently shows that the delivery of the forged telegram was the primary cause of the payment of the check. This is shown by the fact that plaintiff had, after receipt of the message, agreed to pay the check before the conversation with John Young. This conversation was incidental to an explanation of the fact that the check was not presented by the Amarillo bank, and calculated to allay any suspicions suggested by such circumstance.

[3] The petition alleged on information and belief that John Young forged and delivered said telegram to the defendant company at Amarillo. The evidence offered which tended to connect John Young with such matter was that already set out in our discussion of the foregoing proposition, and in addition evidence by Donna Gardner that about June 1st she had told John Young that she had stopped payment of the check, and he agreed to meet her and make some modification of the contract, in connection with which the check was given, and that she did not see John Young in Amarillo. The court gave a peremptory instruction in favor of John Young, on the ground that the evidence did not sustain the allegations of the petition as to him. Under the fifth proposition the appellant contends that the plaintiff could not recover against it without establishing the fact that John Young forged and delivered the message, as alleged in the plaintiff's petition. The gist of the cause of action against the defendant was its negligence in accepting and delivering the forged telegram. As we have seen, the delivery of the forged

telegram made out a prima facie case of negligence against the defendant. It was not necessary for the plaintiff to have alleged or proven more. The allegation that John Young caused the forged message to be delivered to the telegraph company was necessary in the pleading of a cause of action against him, but so far as the appellant is concerned the allegation as to the person who actually delivered the forged message to it was not necessary, and is merely an allegation of identity and an incidental evidentiary fact. There is no variance between the negligence alleged and that on which recovery was based. There was, according to the instruction of the trial court, merely a failure of proof of this particular allegation. We do not think that a failure on the part of plaintiff to make proof of this particular allegation was fatal to its recovery against the appellant. E. L. & R. R. R. Co. v. Brinker, 68 Tex. 500, 3 S. W. 99; Woolley v. Canyon Exchange Co. (Tex. Civ. App.) 159 S. W. 403; Parks v. Sullivan (Tex. Civ. App.) 152 S. W. 704; Lumsden v. Jones (Tex. Civ. App.) 205 S. W. 377 (5); Enc. Pl. & Pr. vol. 22, p. 533, 534; Stand. Enc. of Proc., vol. 25, p. 642; Townes on Pleading, pp. 419–422. What we have here said is sufficient to dispose of the contentions made by the appellant under the ninth and tenth propositions.

[4, 5] The appellant pleaded that at the time of the execution of the check Donna Gardner and Jeanette Hartwell entered into a contract with John Young by the terms of which John Young agreed to sell and assign to said parties a contract made by him with E. C. Hall and wife for the purchase of certain land in the state of Kansas, and that the said Donna Gardner delivered to John Young as a part of the consideration for this contract the check in question; that the bank became bound and obligated to pay said check; that the contract, as well as the check, was a binding obligation on the parties thereto, and that by reason of the premises "the plaintiff is not entitled to recover in this suit." And in this connection the defendant further pleaded that Donna Gardner was a necessary party to the suit, and that the plaintiff had failed to bring in the necessary parties to the suit. The pleading asks for no relief of any kind against Donna Gardner, nor requests that the defendant be permitted to make her a party for the purpose of asking any relief against her.

It seems to have been the idea of the pleader that if Donna Gardner in fact owed John Young, the payee in the check, this would be a complete defense to the plaintiff's cause of action against the telegraph company, and its propositions 14 and 15 are based on this conception. In one of these propositions it is urged that there was error in a failure to require that Donna Gardner be made a party to the suit, and in the other error is predicated on the rejection of evidence as to the contract between John Young and Donna Gardner, and other evidence which would tend to show that Donna Gardner was justly indebted to John Young. We think that these propositions are based on an erroneous conception of the law. The facts, if true, do not constitute a bar to recovery, but could only be pleaded if at all in mitigation of the damages sustained, and the pleading is not sufficient for this purpose. John Young could not have sued the bank for nonpayment of the check in any event. House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561. Donna Gardner, so far as the bank was concerned, had a right to stop payment of the check. Morse on Banks & Banking (5th Ed.) §§ 397–399. Although she may have been liable to John Young for payment of the check, she had the right to pay her debt, except under compulsion of law, in her own way, and the bank had no right to decide the question as to whether the debt to John Young was a just one, and pay it against her instructions. She had the right in any contest with John Young to any advantage of the position she would have been in had the bank followed her instructions. The bank was out its money paid on the check, and had sustained damages to such amount. Any right of recovery which it may have had against Donna Gardner was a matter to be shown in mitigation of such damages. The bank could not recover this money of Donna Gardner by a mere showing of its payment of the check, and it had no right, without Donna Gardner's consent, to charge the check to her account, and if it did so could not have successfully defended a suit brought by her for the balance of her account, including such amount. Kellog v. Citizens' Bank, 176 Mo. App. 288, 162 S. W. 643; People's Savings Bank & Trust Co. v. Lacy, 146 Ala. 688, 40 South. 346; Schneider v. Irving Bank, 30 How. Prac. (N. Y.) 190. If the bank had any right to recover anything at all against Donna Gardner, it was only by way of subrogation to the rights of John Young. Schneider v. Irving Bank, supra; note to case of Usher v. Tucker, L. R. A. 1916F, 828. If the bank was a volunteer in the payment of Donna Gardner's debt, it would not be subrogated. First State Bank & Trust Co. v. Vardeman (Tex. Civ. App.) 188 S. W. 695. It may be that the bank, paying the check in good faith believing that Donna Gardner sent the telegram in question, would be subrogated, subject, of course, to any showing that the subrogation would not in any manner injuriously affect the rights of Donna Gardner. First State Bank v. Vardeman (Tex. Com. App.) 221 S. W. 585; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 5, § 2343; Vasser v. City of Liberty, 50 Tex. Civ. App. 111, 110 S. W. 119; Journal Publishing Co. v Barber, 165 N. C. 478, 81 S. E.

695; Spaulding v. Harvey, 129 Ind. 106, 28 N. E. 323, 13 L. R. A. 619, 28 Am. St. Rep. 176; Babcock v. Orcutt, 61 Okl. 139, 160 Pac. 729, and authorities already cited.

We may, for the purpose of the decision, assume that the bank, under the circumstances stated, would have had the right of subrogation, with the qualifying statement that the authorities referred to are sufficient to raise a real doubt as to whether this is true. But the right of subrogation, if it existed, did not pay the plaintiff bank the money it was out. It was merely a right which required a resort to the courts to establish. R. C. L. vol. 25, p. 1391, § 74; Zuellig v. Hemerlie, 60 Ohio St. 27, 53 N. E. 447, 71 Am. St. Rep. 707. When the right should be thus established it only opened up the controversy between John Young and Donna Gardner, and the bank could only finally get its money by prosecuting John Young's cause of action against Donna Gardner to judgment and collecting the judgment. It is obvious that many complications would likely occur in the prosecution of such a suit that would make its final termination uncertain. The countermand order against the check indicated that Donna Gardner proposed to contest its payment with John Young. Jeanette Hartwell was a party to the contract with John Young, and might have been a necessary party to any litigation growing out of this subject. Plaintiff alleged that John Young forged the telegram, directing the bank to pay the check. If this were true it may be that John Young would forfeit any right to thereafter sue on the check or the debt for which it was given. While no alteration of the check itself was made, the forgery of the telegram in connection therewith changed the relation and obligation of the bank as to its payment, and the courts might apply the rule that is applied in the case of alteration of instruments. Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56. So the situation as it appeared from plaintiff's petition and defendant's answer, was simply this: The plaintiff had been caused by the defendant's negligence to pay out money that it would not have paid out and which it had not recovered, and had a doubtful right of recovery against a third person, the value of which could only be determined by suit and execution of any judgment that might be obtained in such suit. It is the law that one who has sustained injury by the wrong of another is required to exercise ordinary care to mitigate the damages. C. J. vol. 17, pp. 677, 773. But it has been held that such care does not require the injured party to enter upon doubtful litigation against some third person to secure redress for injuries already sustained, before proceeding against the wrongdoer. Reed v. Western Union Telegraph Co., 135 Mo. 661,

37 S. W. 907 (paragraph 4), 34 L. R. A. 492, 58 Am. St. Rep. 609; Hasbrouck v. Western Union, 107 Iowa, 160, 77 N. W. 1034, 70 Am. St. Rep. 181; Bentley v. Western Union Telegraph Co., 98 Wash. 431, 167 Pac. 1127, L. R. A. 1918B, 965. In any event, the matter was available only in mitigation of damages, and defendant's pleading has not the requisite elements of such a plea.

[6] It seems to us that if the facts pleaded afforded the defendant any right at all by reason of the fact that Donna Gardner might be made to pay the check at the end of litigation, justice would require that the defendant, who had placed the plaintiff in its predicament, should be required to assume the risks and burdens of the conduct of such litigation. If the bank were entitled to subrogation to the right of John Young, the telegraph company might possibly be entitled to the same privilege if it should be compelled to pay the bank, and if it should show that it was itself imposed upon in the matter of the sending of the telegram. But subrogation, if it is to be invoked, must be pleaded. Sherk v. First National Bank (Tex. Civ. App.) 152 S. W. 836, and authorities. And the defendant does not pray for such right. We do not wish to be understood as holding that if the answer had clearly pleaded a right of subrogation the trial court should have delayed and complicated plaintiff's case against the defendant by bringing in and trying these collateral issues that would have been involved in the trial of any controversy between John Young and Donna Gardner.

The case is not like that of the First National Bank v. Fourth National Bank, 77 N. Y. 320, 33 Am. Rep. 618, so confidently relied upon by the appellant. In that case the defendant was negligent in failing to collect a draft which it had accepted for collection; the drawee becoming insolvent in the meantime. But the drawer was properly charged by protest, and according to plaintiff's own allegations was solvent. The trial court gave the plaintiff judgment for the full amount of the draft, and the appellate court held that this was error. In that case the plaintiff, the holder of the draft, was out nothing, and was still the owner and in possession of the draft and had a direct cause of action for its collection against the drawer. The draft was property and furnished certain direct rights against the parties thereto. The negligence of the collecting agent was in acting so as to impair or render less valuable the rights evidenced by the draft. In respect to such matters, Daniel, on Negotiable Instruments, at section 329, thus states the law:

"The measure of damages which the holder is entitled to recover of the bank or other collecting agent who has been guilty of negligence or default in respect to it is the actual loss

which has been suffered. That loss is prima facie the amount of the bill or note placed in its or his hands; but evidence is admissible to reduce it to a nominal sum. 'The defendant may mitigate damages by showing either the solvency of the maker, the insolvency of the indorser or that the paper was partially or wholly secured or any other fact that will lessen the actual loss to the plaintiff; the real loss occasioned by the improper ·conduct of the defendant being a fact for the jury to arrive at in measuring the plaintiff's damages.'"

Whether this be a correct statement of such law or not it is certainly true that in this case the amount of damages is prima facie the amount of money that the plaintiff bank has been wrongfully caused to pay out. It has actually sustained this loss, and the burden would be upon the defendant to show that this loss should have been or may be mitigated. As we have already pointed out, the bank in this case had no right against Donna Gardner except after a resort to a court of equity for subrogation to the rights of some one else and with a probability of contest. The right of subrogation "is not a substantive, tangible right, of such nature and character that it can be seized and held and enjoyed, independently of a judicial proceeding. It is a right of action only; that is, it must be established by a judicial proceeding." R. C. L. vol. 25, p. 1391. We do not think the pleading referred to showed a good defense, and did not require plaintiff to make Donna Gardner a party to the end that some one of the litigants might be enabled to ask some sort of relief against her. For the same reason there was no error in the rejection of the evidence offered to establish these facts.

[7] The sixth, seventh, and eighth propositions are devoted to a consideration of an alleged error in the refusal of evidence that the bank charged this check to Donna Gardner's account as soon as she had sufficient funds on deposit for that purpose. This evidence was not admissible unless it was shown, or offered to be shown, in connection therewith that such act was done with the consent of Donna Gardner. The whole record shows that this was not the case.

[8] The defendant, on October 28, 1918, filed a plea in abatement, in which it was set up that after the plaintiff's cause of action had accrued the government of the United States, acting under the emergency of war, had taken control of its business, and that no suit could be prosecuted against it while its property was under such control. No action appears from the record to have been taken on this plea. The defendant, on May 23, 1921, filed an amended answer, in which it does not mention the plea in abatement. These facts furnish no reason for sustaining the eleventh proposition that the judgment is void because there was no service on the defendant; the only service being on agents acting for it while it was under government control. The defendant has answered and tried the case without insisting on any action on its plea in abatement, or without raising such question in any other way.

[9] There was no error in permitting the bank's officer to testify that he paid the check on the belief that Donna Gardner had sent the telegram. This evidence was admissible to show that the bank acted in good faith in the payment of the check, and was actually deceived by the forged telegram.

[10] On cross-examination Donna Gardner admitted that she had executed a contract with the bank in reference to the payment of the $2,500, and defendant, in connection with such examination, introduced this contract in evidence over plaintiff's objection. At some later time in the trial the court "peremptorily instructed the jury not to consider said contract for any purpose." We think this was error. It was permissible for the defendant, on cross-examination, to show Donna Gardner's interest in the litigation; which fact could be considered by the jury in determining the weight to be given to her testimony. The contract referred to showed that Donna Gardner was vitally interested in the subject-matter of the suit. It recited that the bank had been threatening to sue her, with the telegraph company, claiming that she was responsible for the payment of the check, and that she was contending that the telegram had been forged by John Young. It provided that in consideration of the bank not joining her in the suit she would pay the bank the said sum of $2,500, in the event it failed to obtain judgment against the telegraph company. As Donna Gardner was the only witness who testified as to the forgery of the telegram, we cannot assume that this action of the court was harmless.

[11] John Young has filed a motion that the judgment be affirmed as to him. There is no complaint by any one as to the judgment in his favor, though the appellee bank suggests in its argument that the peremptory instruction in his favor was not proper. We are inclined to think that the evidence was sufficient to have required the submission of an issue as to his liability for the sending of the false telegram. We have already detailed this evidence. It showed, if true, that he was the beneficiary of the forgery that was committed; that he presented the check under circumstances calculated to arouse some question and make a false statement in regard to the facts attending the sending of the telegram by Donna Gardner. He sat silent at the trial when these incriminating circumstances called on him for an explanation. If he were responsible for the forgery, he is the principal wrongdoer, and ought to bear the ultimate loss. Even the telegraph company,

though guilty of negligence, could recover over against him if it did not knowingly participate in the wrong. The ends of justice require, we think, that he be held in the case, and we overrule the motion.

Reversed and remanded.