THOMAS M. McCORD *vs.* WESTERN UNION TELEGRAPH COMPANY.

September 4, 1888.

**Telegraph Company—Liability for Acts of Agent—Fraudulent Message.**—A telegraph company is liable for the fraud and misfeasance of an agent, intrusted with the duty of transmitting messages over its line, in sending a false and fraudulent message, prepared by himself, to a party who receives the same in the usual course of business, and in good faith acts thereon, to his damage.

**Same — Message Forged and Sent by Agent — Proximate Cause of Loss.**—And where the local agent of a telegraph company, who was also agent of an express company at the same place, sent a forged dispatch to a merchant in a neighboring city, requesting him to forward money to his correspondent at the former place, to use in buying grain, and the

same was duly received, and the money in good faith forwarded by express in response to the telegram, but was intercepted and converted to his own use by the agent, *held*, that the transmission of the forged dispatch was the proximate cause of the loss, and that the corporation was liable, though an action might also have been maintained against the express company.

Appeal by defendant from an order of the district court for Ramsey county, *Simons*, J., presiding, overruling a demurrer to the complaint.

*I. V. D. Heard*, and *Wager Swayne, Geo. H. Fearons*, and *C. Walter Artz*, for appellant.

*Flandrau, Squires & Cutcheon*, for respondent.

VANDERBURGH, J.    Dudley & Co., who resided at Grove City, Minn., were the agents of plaintiff for the purchase of wheat for him. He resided at Minneapolis, and was in the habit of forwarding money to them, to be used in making such purchases, in response to telegrams sent over the defendant's line; and delivered to him by it. On the 1st day of February, 1887, the defendant transmitted and delivered to plaintiff the following message, viz.:

"GROVE CITY, MINN., February 1, 1887.

"*To T. M. McCord & Co.:*   Send one thousand or fifteen hundred to-morrow.                              DUDLEY & Co."

The plaintiff in good faith acted upon this request, believing it to be genuine, and, in accordance with his custom, forwarded through the American Express Company the sum of $1,500 in currency, properly addressed to Dudley & Co., at Grove City. It turned out, however, that this dispatch was not sent by Dudley & Co., or with their knowledge or authority; but it was in fact false and fraudulent, and was written and sent by the agent of the defendant at Grove City, whose business it was to receive and transmit messages at that place. He was also at the same time the agent of the American Express Company for the transaction of its business, and for a long time previous to the date mentioned had so acted as agent for both companies at Grove City, and was well informed of plaintiff's method of doing business with Dudley & Co.   On the arrival of the package by

express at Grove City, containing the sum named, it was intercepted and abstracted by the agent, who converted the same to his own use. The dispatch was delivered to the plaintiff, and the money forwarded in the usual course of business. These facts, as disclosed by the record, are sufficient, we think, to establish the defendant's liability in this action.

1. Considering the business relations existing between plaintiff and Dudley & Co., the dispatch was reasonably interpreted to mean a requisition for one thousand or fifteen hundred dollars.

2. As respects the receiver of the message, it is entirely immaterial upon what terms or consideration the telegraph company undertook to send the message. It is enough that the message was sent over the line, and received in due course by plaintiff, and acted on by him in good faith. The action is one sounding in tort, and based upon the claim that the defendant is liable for the fraud and misfeasance of its agent in transmitting a false message prepared by himself. *New York, etc., Tel. Co.* v. *Dryburg*, 35 Pa. St. 298, (78 Am. Dec. 338;) Gray, Tel. § 75.

3. The principal contention of defendant is, however, that the corporation is not liable for the fraudulent and tortious act of the agent in sending the message, and that the maxim *respondeat superior* does not apply in such a case, because the agent in sending the dispatch was not acting for his master, but for himself, and about his own business, and was in fact the sender, and to be treated as having transcended his authority, and as acting outside of and not in the course of his employment, nor in furtherance of his master's business. But the rule which fastens a liability upon the master to third persons for the wrongful and unauthorized acts of his servant is not confined solely to that class of cases where the acts complained of are done in the course of the employment in furtherance of the master's business or interest, though there are many cases which fall within that rule. *Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543; *Fishkill Savings Inst.* v. *National Bank*, 80 N. Y. 162, 168; *Potulni* v. *Saunders*, 37 Minn. 517, (35 N. W. Rep. 379.) Where the business with which the agent is intrusted involves a duty owed by the master to the public or third persons, if the agent, while so employed, by his

own wrongful act occasions a violation of that duty, or an injury to the person interested in its faithful performance by or on behalf of the master, the master is liable for the breach of it, whether it be founded in contract or be a common-law duty growing out of the relations of the parties. 1 Shear. & R. Neg. (4th Ed.) §§ 149, 150, 154; Tayl. Corp. (2d Ed.) § 145. And it is immaterial in such case that the wrongful act of the servant is in itself wilful, malicious, or fraudulent. Thus a carrier of passengers is bound to exercise due regard for their safety and welfare, and to protect them from insult. If the servants employed by such carrier in the course of such employment disregard these obligations, and maliciously and wilfully, and even in disregard of the express instructions of their employers, insult and maltreat passengers under their care, the master is liable. *Stewart* v. *Brooklyn & Crosstown R. Co.,* 90 N. Y. 588, 593. In *Booth* v. *Farmers', etc., Bank,* 50 N. Y. 396, an officer of a bank wrongfully discharged a judgment which had been recovered by the bank, after it had been assigned to the plaintiff. It was there claimed that the authority of the officer and the bank itself to satisfy the judgment had ceased, and that hence the bank was not bound by what its president did after such assignment. But the court held otherwise, evidently upon the same general principle, as respects the duty of the bank to the assignee, and laid down the general proposition, equally applicable to the agent of the defendant in the case at bar, that the particular act of the agent or officer was wrongful and in violation of his duty, yet it was within the general scope of his powers, and as to innocent third parties dealing with the bank, who had sustained damages occasioned by such act, the corporation was responsible.

And the liability of the corporation in such cases is not affected by the fact that the particular act which the agent has assumed to do is one which the corporation itself could not rightfully or lawfully do. In *Farmers', etc., Bank* v. *Butchers' & Drovers' Bank,* 16 N. Y. 125, 133, (69 Am. Dec. 678,) a case frequently cited with approval, the teller of a bank was with its consent in the habit of certifying checks for customers, but he had no authority to certify in the absence of funds, which would be a false representation; yet it was held, where he ha

duly certified a check though the drawer had no funds, that the bank was liable, on the ground that, as between the bank which had employed the teller, and held him out as authorized to certify checks, (which involved a representation by one whose duty it was to ascertain and know the facts,) and an innocent purchaser of the check so certified, the bank ought to be the loser. *Gould* v. *Town of Sterling*, 23 N. Y. 439, 463; *Bank of New York* v. *Bank of Ohio*, 29 N. Y. 619, 632. See, also, *Titus* v. *President, etc., Turnpike Road*, 61 N. Y. 237; *New York & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 30, 64; *Lane* v. *Cotton*, 12 Mod. 472, 490. The defendant selected its agent, placed him in charge of its business at the station in question, and authorized him to send messages over its line. Persons receiving dispatches in the usual course of business, when there is nothing to excite suspicion, are entitled to rely upon the presumption that the agents intrusted with the performance of the business of the company have faithfully and honestly discharged the duty owed by it to its patrons, and that they would not knowingly send a false or forged message; and it would ordinarily be an unreasonable and impracticable rule to require the receiver of a dispatch to investigate the question of the integrity and fidelity of the defendant's agents acting in the performance of their duties, before acting. Whether the agent is unfaithful to his trust, or violates his duty to, or disobeys the instructions of, the company, its patrons may have no means of knowing. If the corporation fails in the performance of its duty through the neglect or fraud of the agent whom it has delegated to perform it, the master is responsible. It was the business of the agent to send dispatches of a similar character, and such acts were within the scope of his employment, and the plaintiff could not know the circumstances that made the particular act wrongful and unauthorized. As to him, therefore, it must be deemed the act of the corporation. *Bank of Cal.* v. *Western Union Tel. Co.*, 52 Cal. 280; *Booth* v. *Farmers', etc., Bank, supra.*

4. The defendant also insists that it is not liable for the money forwarded in response to the dispatch, because it was embezzled by Swanson as agent of the express company. It is unnecessary to consider whether an action for the amount might not have been maintained against that company as well as against the defendant or the

agent himself. The position of trust in which the defendant had placed him enabled him, through the use of the company's wires in the ordinary course of his agency, to induce the plaintiff to place the money within his reach. It is immaterial what avenue was chosen. Had it been forwarded and intercepted by a confederate, the result would have been the same. The proximate cause of plaintiff's loss was the sending of the forged dispatch. The actual conversion of the money was only the culmination of a successful fraud. The acts of Swanson as agent of the defendant and of the express company were the execution of the different parts of one entire plan or scheme. That his subsequent acts aided and concurred in producing the result aimed at, did not make the forged dispatch any the less operative as the procuring or proximate cause of plaintiff's loss. *Milwaukee & St. Paul Ry. Co.* v. *Kellogg*, 94 U. S. 469, 475; *Martin* v. *North Star Iron Works*, 31 Minn. 407, 410, (18 N. W. Rep. 109.)

Order affirmed, and case remanded for further proceedings.

NOTE. The case of ST. PAUL ROLLER MILL CO. *vs.* WESTERN UNION TELEGRAPH CO. was argued by the same counsel and at the same time with the foregoing case, and with the same result.