POSTAL TELEGRAPH & CABLE CO. v. TRADERS' STATE BANK.

(Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1912.)

TELEGRAPHS AND TELEPHONES (§ 61*)—SPURIOUS MESSAGE — TELEGRAPH COMPANY'S LIABILITY—CONTRIBUTORY NEGLIGENCE.

A telegraph company negligently permitted some employé or other person to forge a telegram purporting to be from a certain trust company in New York, advising plaintiff bank that on presentation of a telegram from C. the trust company guaranteed payment of a draft of H. L. C. on C. for not more than $450, waiving identification. This telegram having been presented to the bank by an employé of the telegraph company on one of the company's receiving blanks which were not provided for the public, one claiming to be H. L. C. came to the bank on the same day, and presented three other telegrams directed to him purporting to have been sent by C. from New York, all of them referring to the money desired, and one of them stating that the trust company had been induced to wire plaintiff to pay $450, but that the signer thought H. L. C. might get along on less, whereupon he drew a draft on C. for $375, which plaintiff paid. Held, that since a telegraph company, by delivering a telegram to an alleged addressee, represents that it has been received in due course over its wires, and that it is genuine, defendant, by delivering the spurious message, committed an actionable fraud on plaintiff, and that plaintiff's contributory negligence in failing to require further identification or in failing to ask the alleged sender to repeat the message was no defense.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 49; Dec. Dig. § 61.*]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by the Traders' State Bank against the Postal Telegraph & Cable Company. Judgment for plaintiff, and defendant appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

A. P. Wozencraft and D. A. Frank, both of Dallas, for appellant. J. J. Eckford and Rembert G. Watson, both of Dallas, for appellee.

FLY, J. This is a suit for damages instituted by appellee against appellant, based on negligence and fraud upon the part of appellant in delivering a spurious telegram to appellee, which induced it to pay to a person claiming to be H. L. Carter the sum of $375. Appellant's defense was a plea of contributory negligence on the part of appellee in paying the money on the message delivered to it by appellant. The evidence showed that on or about January 29, 1910, the following telegram was delivered at the bank to the president of appellee by an employé of appellant: "Upon presentation of telegram from A. Carter, we guarantee payment draft H. L. Carter on Alfred Carter, not more than four hundred and fifty dollars. Waive identification. Mutual Alliance Trust Co. of New York." The telegram was written on what is known as a receiving blank. Such blanks are not given to the public, but are used by the telegraph company for messages received by it. The party claiming to be H. L. Carter came to the bank to collect the money on the telegram on the same day it was received, presented three other telegrams directed to H. L. Carter purporting to have been sent by his father, A. Carter, from New York, all of them referring to the money desired by H. L. Carter. One of them stated that he had the Mutual Alliance Trust Company to wire appellee to pay $450, but thought his son might "make out with four hundred." The son concluded that he could "make out" on $375, and drew a draft on his father for that amount, and it was cashed by appellee. The three telegrams purporting to have been sent by A. Carter to H. L. Carter were written on the receiving forms of appellant, and all the messages were written with the typewriter used by appellant, and had on them the number used by the receiver of New York messages, although none of them had been sent from New York, and evidently were concocted in the office of appellant in Dallas. It was shown by witnesses for appellant who were connected with banks that a draft should not be paid on a telegram without identification, even though identification was waived, and that a telegram should have been sent to New York asking the bank to repeat its message. Appellant made no effort to account for the spurious telegram sent out by it, nor for the three telegrams on its blanks, written by its receiver of New York messages, with his private mark on them.

The court instructed the jury that, if they found certain facts, they should find for appellee, "unless you find that plaintiff failed to exercise such care as a person of ordinary care and prudence would, under like circumstances, not have cashed said draft, in which event you will find for defendant." Special charges more fully presenting the issue of contributory negligence were requested by appellant and refused by the court, and through three assignments of error that action is presented as error. Although the charge of the court is rather confusing, it cannot be error so far as appellant is concerned for the reasons hereinafter given. The special charges were properly refused.

In this class of cases contributory negligence cannot become an issue. By negligently permitting some employé or other person to forge a telegram, and then send it by an employé to a bank, appellant was guilty of gross fraud upon the rights of the bank, and it cannot evade the results of that fraud by a plea that appellee failed to use means to protect itself against such fraud. It matters not that appellee may not have used ordinary care in verifying the telegram, and in identifying the person desiring to profit by it, appellant cannot be heard to say that appellee should not have believed that the telegram was a genuine one, which had come over the wires of appellant from New York as represented by it. When the telegram was delivered to appellee by appellant, it carried with such delivery a representation upon the part of appellant that it had been received in due course over its wires from New York, and appellee was authorized to act on the assurance of its genuineness, and no duty devolved upon it to exercise diligence to ascertain if the telegram had really been sent from New York. That duty rested on appellant, and it was guilty of perpetrating a fraud when it allowed a telegram to leave its office which had been prepared in that office, and had never come over its wires. Appellee had no means of knowing that the telegram was spurious, and could act on the presumption that appellant was acting carefully in the discharge of its business. The fraud would be no less reprehensible, whether it occurred through negligence or design, but if the representations of a party are made through ignorance, carelessness, or mistake, and the other party is deceived and misled thereby, the person making the representations would be liable for any damage resulting therefrom, no matter whether the party who acted on the representations acted with ordinary care or not. "It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded, when he demands relief, that he ought not to have believed or trusted him. Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action; but, where one sues another for a positive, willful wrong or fraud, negligence by which the party exposed himself to the wrong or fraud will not bar relief." Albany Savings Institution v. Burdick, 87 N. Y. 40. See, also, David v. Park, 103 Mass. 501. The same rule would apply in this case as

though the appellant had, through its agents, assured appellee that a bank in New York had sent it the message, and that it was genuine in every respect. The effect of its delivery of the message, which was intensified by allowing a person claiming the name mentioned in the telegram to obtain access to its receiving forms and write messages thereon to be used in connection with the telegram, was the same as though appellant had vouched for the genuineness of all the messages. Appellee was ignorant of the fraud practiced on it, and owed no duty to appellant to investigate for the purpose of ascertaining its fraud. As said by Bigelow in his work on Fraud, pp. 523, 524: "The proposition has now become very widely accepted at law as well as in equity, at least as general doctrine, that a man may act upon a positive declaration of fact, notwithstanding the fact that the means of knowledge were specially open to him * * * of the real state of things. It may be improbable that a man with the truth in reach should accept a representation made in regard to it, but the improbability can be no more than matter of fact. If the representation were of a character to induce action, and did induce it, that is enough." The doctrine of contributory negligence has nothing to do with such a case.

The case of W. U. Tel. Co. v. National Bank, 97 Tex. 219, 77 S. W. 603, 65 L. R. A. 805, 1 Ann. Cas. 573, sustains the proposition that the delivery of a telegram constitutes a representation that the message which came over its wires was genuine. In that case a swindler had tapped the wire, intercepted a message from a bank, and sent a reply that induced the bank to cash the draft of an accomplice of the swindler, and the telegraph company was held liable. There can be no question of its negligence in this case which was of such a flagrant and outrageous character that it amounted to constructive fraud, against which appellee was not called upon to exercise care. Fiduciary relations exist between telegraph companies and the general public, and to hold that men cannot act on the assumption that telegrams delivered to them were duly received over the telegraph wires in the due prosecution of business would place a premium upon fraudulent negligence and materially disturb the business of the country. "It is not the rule that a person injured by the fraudulent and false representations of another is held to the exercise of diligence to suspect and discover the falsity of such statements. In the absence of knowledge to the contrary, he would have a right to rely and act upon such statements, and certainly the wrongdoer in such a case cannot be heard to complain that the other should have believed his solemn statements." Western Piano Co. v. Anderson, 45 Tex. Civ. App. 513,

101 S. W. 1061; U. S. Gypsum Co. v. Shields, 101 Tex. 473, 108 S. W. 1165. The person desiring to collect on the fraudulent and fictitious telegram presented a telegram purporting to have been sent by A. Carter to whom reference was made in the telegram received by appellee, and that was written on a receiving blank of appellant and with the same typewriter and the number of the receiving agent, and appellee was justified in accepting it as true and genuine. The negligence of appellant in sending out the fictitious telegram made it possible for the other fictitious telegrams to be used as means of identification by the swindler and they were properly admitted in evidence. Appellant's gross negligence was back of all of the telegrams through which the fraud was perpetrated.

There is no merit in the seventh and eighth assignments of error. The statements complained of were utterly immaterial in view of the other testimony. All of the facts tended to show the negligence of appellant.

The judgment is affirmed.