## Case v. Steel Coal Company.

(Decided January 8, 1915.)

### Appeal from Pike Circuit Court.

1. Libel and Slander—Libel by Servant—When Master Not Liable for.—In an action for damages brought by one of its employes against a corporation for a libel affecting him, written and published by the corporation's book-

keeper, a peremptory instruction directing a verdict for the defendant was properly given, where it was conclusively shown by the evidence that the bookkeeper was not at the time acting in the execution of any authority, express or implied, given him by the corporation, and the act was not within the apparent scope of his employment, or in the furtherance of its business, and was never ratified by the corporation.

2. Master and Servant—When Act of Servant Will or Will Not Be Binding Upon the Master.—The reason the master is liable for the act of his servant at all is because the servant is acting in that matter in the master's stead, for him. If the servant is not acting for the master, he cannot be said to be his representative in that act. So, if the servant is charged by his master with the authority to act in his stead in a given matter, the servant's action or his failure to act, as the case may be, is imputed to the master, as if it were his own. But where the servant steps aside from his employment assuming to act, and does act, solely on his own account in a matter which the master has no more connection with than if he were a complete stranger, it would not be logical or fair to make the master suffer for it, for in doing that act the servant, so called, was absolutely his own master.

E. J. PICKELSIMER and ROSCOE VANOVER for appellant.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Pike Circuit Court entered upon a verdict returned in behalf of appellee in obedience to a peremptory instruction from the court. The action was brought by appellant to recover of appellee damages for the alleged false and malicious publication by its agent of a libel against and concerning him. The language and character of the libel will more fully appear from the following averments of the petition:

"Plaintiff states that on and prior to February 16, 1913, he was employed by the defendant and in its service, engaged in mining coal at its mine in Pike county. * * * That it was customary for defendant company to issue to its laborers statements showing the amount of labor performed by the laborer for the two weeks preceding, and said statement also showed any and all advances made said laborer for said period. * * * That on said date defendant, by its duly authorized bookkeeper, issued a statement to this plaintiff showing the amount due said plaintiff from defend-

ant and also, under the head of advances, or under the head showing what defendant had paid plaintiff, defendant wrongfully, unlawfully, willfully and maliciously, and for the purpose of defaming plaintiff in his good name and character, and with malice toward plaintiff, falsely issued said statement with the following item as advanced plaintiff, to-wit: 'Mulage, $1.50.' That the said bookkeeper of defendant issuing said statement for defendant had the authority under his said employment to issue statements for defendant and was acting in the scope of his authority under his employment by defendant when he issued said statement as above set out. That said statement was exhibited to sundry people and citizens of Pike county, Kentucky, by defendant's said bookkeeper. That by the word 'Mulage' as charged in said statement defendant meant to convey, and those who saw said statement understood defendant to convey, the meaning that plaintiff had been having sexual intercourse with defendant's mules used by defendant in its said coal mine in the mining and operating its said coal mines. That at and previous to said time defendant had been and was using mules in its said mining operations in its said mines; that it was known and generally understood among the miners and people in and about said mines that the word 'Mulage,' as used on said statement, meant to have sexual intercourse with a mule, and that when so charged as an advancement on said statement it meant that defendant company was charging plaintiff the sum of $1.50 for having sexual intercourse with its mules; that defendant's said bookkeeper, having the authority to issue statements for defendant, showed and exhibited said statement to various and sundry people and at said time laughed and made fun of plaintiff, and thereby and as herein set out, injured and defamed the good name and character of said plaintiff, falsely and maliciously. to his damage in the sum of $3,000.00.''

Appellee's answer, as amended, contained two paragraphs, the first being a traverse and the second alleging, in substance, that, although it did, on February 16, 1913, issue to the appellant a statement showing what was due him for his labor and also such charges as he was owing it, the statement as delivered to appellant contained no charge for ''mulage,'' as alleged in the petition, but that, after the statement was issued and

delivered to appellant, someone then present in appellee's store suggested, as a joke, that appellant should be charged with "mulage," whereupon the latter returned the statement to its bookkeeper, who, to carry out the jest, added to it the word "mulage," and placed opposite same the figures "$1.50;" that the whole matter was a joke at which appellant took no offense and in which he participated by returning the statement to the bookkeeper for the purpose of having the words and figures in question added to it; and that no charge was in fact made against appellant or deducted from his wages for any such item.

On the trial appellee, at the conclusion of appellant's evidence, moved the court to grant a peremptory instruction directing a verdict for it. The court, however, then declined to act upon the motion, but later granted it at the conclusion of all the evidence.

It is insisted for appellant that the giving of the peremptory instruction was error. If the word "mulage" and accompanying figures complained of had been written and published by appellee's bookkeeper, Johnson in the manner alleged in the petition, its libelous character, in view of the evidence as to the meaning given the word "mulage" by the miners of the community in which appellee's mine is situated, would be manifest, because, as applied, it tended not only to make appellant contemptible and odious, which would of itself make the tort complete, but it in fact charged him with the crime of buggery. So, if the libel had been committed in the manner and under the circumstances indicated, there would seem to be no doubt of the appellant's right to make the bookkeeper, Johnson, responsible therefor in damages; but it would not follow that appellee would be responsible for the act of Johnson in writing or publishing the libel, unless it was done in execution of the authority, express or implied, given by it; for beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant not done in the execution of the service for which he was engaged cannot be regarded as the act of the master.

It does not appear from the evidence, however, that the alleged libel was committed in the manner alleged in the petition. It was admitted by appellant in giving his testimony, that the statement of his account with

appellee, when first handed him by the bookkeeper, Johnson, did not contain the word "mulage" or the figures $1.50, but that they were added thereto by Johnson after its delivery to appellant; and apparent from the testimony of Johnson, uncontradicted by appellant, and in part corroborated by the witnesses Cline and Steele, that the addition of the objectionable word and figures was suggested by Cline or Steele asking Johnson if in making out the statement for appellant he. had charged him with mulage; in reply to which Johnson said he had not, and then obtained from appellant the statement and added to it the word "mulage" and figures "$1.50." According to all the evidence, this act of Johnson's raised a laugh among the persons present, in which appellant joined. It is true that appellant claims he became indignant on account of the addition to the statement of the word and figures complained of, but we think it manifest, from the testimony of John- son, Cline and Steele, that such indignation was not shown by appellant at the time, and he did not deny that he laughed with the others at what all evidently regarded as the joke perpetrated by Johnson.

It is further apparent from the evidence that of the persons present in the store only Cline saw the word "mulage" and figures "$1.50" after they had been added to the statement by Johnson. They were after- wards seen by two other persons, but it was because the paper was shown them by appellant in the effort to discount or sell it to them, superinduced by his need of the money it showed him entitled to receive, which did not become due until several days later.

The circumstances attending the transaction in ques- tion clearly indicates that Johnson's motive in adding to the statement of the word and figures complained of, was to afford amusement to himself and the other per- sons present. The joke, however, was an indecent one, which only the vulgar mind would appreciate. Although appellant, at the time of its perpetration, was appar- ently amused by it, he did not willingly participate in the joke, and it can readily be understood that a sober second thought enabled him to realize its sting and the humiliation of feeling that would naturally result to a victim of such obscenity. If this were an action against Johnson for the libel complained of, we would be in- clined to hold that he could not escape liability upon the

ground that the libel was a joke. At most, evidence that this was so would be competent only in mitigation of damages, as it would tend to show the motive for the libel and the absence of actual malice.

The remaining question to be determined is, do the facts appearing in the record make appellee responsible for the libel complained of? The paper on which it was written is a printed form appellee requires its bookkeepers to use in furnishing its employes statements of its accounts with them. The statement furnished appellant by Johnson, the bookkeeper, was as follows:

"No. 4.

Feb. 16, 1913.

Mr. Did Case
   Earnings
      Cars, 37 @                 22.20
      Hours
      Tons
      Yards
      Total Earnings
   Advances
      Store                  7.85
      Rent
      Doctor               .50
      Fuel
      Board
      Smithing           .50
      Insurance
      Co. Deductions
  Claims—Mulage       $1.50
(pencil line run through the word "Claims" and on the same line following the word "Claims" is the word "Mulage" written with pencil.)
      Helpers          3.30

    Total Advances       12.15

    Balance Due        10.05"

It appears from the foregoing statement that appellee's indebtedness to appellant was $22.20 and that there was due it from appellant for advances, as shown opposite the proper headings, various items aggregat-

ing $12.15, which, deducted from the $22.20 of its indebtedness to appellant, left due him $10.05, as shown on the statement. According to the evidence, after this statement had been completed Johnson obtained it from appellant and wrote thereon, opposite the word "claims," the word "mulage" and to the right of that word the figures "$1.50." At the time this was done he ran his pencil through the word "claims." All the figures appearing upon the statement were entered with a pen and ink except the figures "$1.50," which, together with the word "mulage," was written with a pencil. It will further be observed that the figures "1.50" were not included in the advances charged to appellant in the statement, nor was the $1.50 actually charged to appellant or deducted from what was due him from appellee. The form of statement used in furnishing appellant his account contains no item or heading for such a charge as muleage, and it is admitted by appellant that no such charge as mulage is required by appellee to be made against its employes.

We think it patent from the evidence that the bookkeeper, Johnson, in writing the word and figures complained of on the statement furnished appellant, was not acting in the performance of any duty required of him by appellee or in the execution of any authority, express or implied, given him by it; nor was it an act within the scope of his employment or in the furtherance of his employer's business. It was merely an act done to accomplish a purpose of his own, wholly foreign to any duty he owed his employer and entirely beyond the apparent scope of his employment by the latter. Nor does it appear from the evidence that his act in writing on the statement the word and figures complained of was at any time approved or ratified by appellee. Many cases have arisen in which the master has been held responsible for the torts of the servant, whether the tort consisted in the infliction of physical injury to the person aggrieved or injury to his character, but in all such cases liability is fastened upon the master because the servant is acting for the master. This doctrine is well stated in Sullivan v. L. & N. R. R. Co., 115 Ky., 447, as follows:

"The reason the master is liable for the act of his servant at all is because the servant is acting in that matter in the master's stead for him. Obviously, if the

servant is not acting for the master, he cannot be said to be his representative in that act. So, if the servant is charged by his master with the authority to act in his stead in a given matter, the servant's action or his failure to act, as the case may be, is imputed to the master as if it were his own. This general doctrine must be too well known to require now the citation of authority to support it. But where the servant steps aside from his employment and, assuming to act, and does act, solely on his own account in a matter which the master has no more connection with than if he were the most complete stranger, it would not be logical or fair to make the master vicariously suffer for it, for in doing that act the servant, so called, was absolutely his own master. * * * In determining whether a particular act is done in the course of the servant's employment, it is proper to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service and pursuing his own end exclusively, the master is not responsible. If the servant was at the time the injury was inflicted acting for himself and as his own master *pro tempore,* the master is not liable. If the servant stepped aside from his master's business, for however short a time, to do an act connected with his business, the relation of master and servant is for the time suspended." C. N. O. & T. P. Ry. Co. v. Rue, 142 Ky., 694.

In Newell on Slander and Libel, page 373, it is said:

"If a partner in conducting the business of a firm causes a libel to be published, the firm will be liable as well as the individual partner. And so, if an agent or servant of the firm defames anyone by the express direction of the firm, or in accordance with the general orders given him by the firm for the conduct of their business. To hold either of the members of a partnership, it is not necessary that the partner should publish the libel himself. It is sufficient if he authorized, incited, or encouraged any other person to do it; or, if having authority to forbid it, he permitted it, the act was his." Burgess & Co. v. Patterson, 32 R., 624.

In Pennsylvania Iron Works v. Voght Machine Co., 139 Ky., 497, it was held that one corporation may sue another for libel on it, as distinct from a libel on its individual members. In that case the plaintiff and defendant were rival ice machine manufacturers, both endeavoring

to secure a particular contract, and defendant's agent, for this purpose, wrote a letter to the proposed purchaser stating that plaintiff was a second-hand dealer, that it put in a class of inferior work, was a scab establishment, and did not have a mechanic in its employ. It was held that such a writing was libelous *per se* and that the corporation whose agent wrote the letter was liable in damages for the libel it contained, because, after obtaining knowledge of the publication of the libel, its failure to repudiate it before suit operated as a ratification and approval of the libel. In the opinion it is said:

"A corporation is liable in damages for the publication of a libel as it is for other torts. To establish its liability the publication must be shown to have been made by its authority, or to have been ratified by it, or to have been made by one of its servants or agents in the scope of his employment in the course of the business in which he was employed. *    *    *"

In Duquesne Distributing Co. v. Greenbaum, 135 Ky., 183, which was an action for slander, it was held that a partnership or corporation is not liable for slander by its servant, unless the actionable words were spoken by its express consent, direction or authority, or were ratified or approved by it. In a case for libel by the servant of a corporation, however, the question of the latter's liability will not turn upon whether it expressly consented to, directed or authorized the libel. It will be responsible for the libel if it was published by the servant in execution of the authority, express or implied, given by the corporation, or in the performance of the service for which the servant was engaged, or the act was one within the apparent scope of his employment. Measured by the above test, there is no cause for holding that appellee is responsible for the libel complained of in this case, hence the action of the circuit court in peremptorily instructing the jury to find for appellee was not error.

Judgment affirmed.