## MACKAY TELEGRAPH-CABLE CO. v. ERHARD. (No. 6703.)

(Court of Civil Appeals of Texas. Austin. May 21, 1924. Rehearing Denied June 25, 1924.)

**1. Telegraphs and telephones ☞70(1)—That cotton sold on receipt of bogus telegram could have been bought later for less than sale price no defense to action for loss from rise in price.**

That cotton sold by broker for principal's account on receipt of bogus telegram could have been bought in open market in month of delivery for less than sale price, thus entailing no loss to principal, is no defense to latter's action in tort, as broker's assignee, against telegraph company, for loss from purchase at increased price to cover sales, rule as to measure of damages in sales of personalty being inapplicable.

**2. Telegraphs and telephones ☞41—One wiring brokers to buy to cover sales made on receipt of bogus telegram held not to have ratified them.**

One wiring brokers to "buy to cover" sales of cotton by them on his account on receipt of bogus telegram, which he had repudiated immediately on learning of it, held not to have ratified sales, so as to preclude recovery from telegraph company, which he had notified must stand loss, whether brokers could have held him legally liable or not; evidence supporting finding that, in sending message, he was only seeking to minimize loss.

**3. Telegraphs and telephones ☞54(5)—Broker's recovery for loss caused by bogus message held not limited.**

One neither adopting nor ratifying bogus interstate telegram, on receipt of which sales were made on his account, held not limited to recovery of amount charged for sending unrepeated message, as provided by Federal laws and rules of Interstate Commerce Commission, which are not applicable to forged or bogus messages.

**4. Telegraphs and telephones ☞70(1)—Brokers selling cotton on receipt of bogus telegram may recover damages proximately resulting.**

Brokers selling cotton on receipt of bogus telegram negligently sent by telegraph company may recover such damages from latter as were direct and proximate result of its negligence.

**5. Telegraphs and telephones ☞73(1)—Negligence in sending bogus telegram held for jury.**

Whether telegraph company's operators exercised ordinary care and prudence in sending bogus telegram held for jury.

**6. Appeal and error ☞1003—Findings of jury not lightly disturbed.**

Jury's findings will not be disturbed, unless against overwhelming preponderance of evidence or clearly influenced by passion or prejudice.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by John A. Erhard against the Mackay Telegraph-Cable Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Spence, Haven, Smithdeal & Spence, of Dallas, for appellant.

John B. Daniel, of Temple, for appellee.

BAUGH, J. John A. Erhard, cotton broker, of Temple, Tex., as assignee of Alex Hyman & Co., cotton brokers, of New Orleans, La., sued appellant for damages claimed as the result of a bogus, forged, or unauthorized telegram sent from some point on appellant's line in Texas, and through its Dallas office, to New Orleans. Alex Hyman & Co., as agents of Erhard, bought and sold cotton for him on the New Orleans Cotton Exchange. About 9:09 a. m., on Saturday, October 23, 1920, appellant company through its connecting lines delivered a message to Alex Hyman & Co., reading, "Sell Five Jany. Erhard." This message meant that said brokers should sell for Erhard on the New Orleans Cotton Exchange 500 bales of cotton for delivery in January, 1921. Acting upon this message Alex Hyman & Co. did sell by open outcry on said exchange between 9:09 and 9:10 a. m. that day for Erhard for January delivery 200 bales at 19.42 cents per pound and 300 bales at 19.44 cents per pound and so notified Erhard at Temple, Tex., by wire filed at New Orleans at 9:12 a. m. This notification message was not delivered to Erhard at Temple, Tex., until 9:44 a. m. that day. Erhard immediately wired Alex Hyman & Co. repudiating any such order and advising said brokers that he had sent no such message. This latter message was received by Alex Hyman & Co. at 10:04 a. m. of that day, four minutes after the cotton exchange had closed for that week. Before the market closed, however, this contract

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had incurred a loss, due to rise in the market price of cotton, of $1,805.

On the following day, Sunday, Alex Hyman & Co. sent a representative to Temple, who advised Erhard that under their contract with him, and having made the sales in good faith because of the telegram, they would hold him for any damages incurred thereby, and that he must look to the appellant company for whatever loss or damages that might be incurred by reason of said bogus message. Thereupon, on Sunday, October 24, 1920, the appellee delivered to the agent of appellant at Temple, Tex., the following communication:

"Temple, Texas, October 24, 1920.

"Postal Telegraph Company and Mackay Telegraph-Cable Company, Temple, Texas—Gentlemen: Messrs. Alex Hyman & Co., cotton brokers of New Orleans, La., advise me that they received the following message delivered to its office at New Orleans, Saturday, October 23, 1920: '52DA BZ 3 911 AM KN Temple, Texas, 1023. Alex Hyman, No. La. Sell 5 Janry. [Signed] Erhard.'

"Messrs. Alex Hyman & Co., acting upon the above order, sold 200 bales for January delivery at 19.42 and 300 bales of cotton at 19.44, reporting same by your company at 9:13 a. m. Saturday, October 23d. This message from Alex Hyman & Co. reads as follows: 'New Orleans, La. 9:44 A. M. October 23, 1920. Erhard, Temple, Texas. Sold two Janry. 19.42, three 19.44. A. H. & Co.'

"Immediately upon receipt of this message from Messrs. Alex Hyman & Co., I wired said company that I had placed no such order, which message was received by it in New Orleans at 10:04 a. m., or four minutes after the market had closed.

"You are hereby advised that I sent no such message, nor did I authorize any person to send same for me, and upon a thorough investigation I find that no such message originated in my office and was sent by your company without my knowledge or consent. Unless I have specific information from you not later than 7:30 a. m. October 25, 1920, or in time for an order to be sent from my office and received by Messrs. Alex Hyman & Co. at New Orleans by the time the market opens tomorrow morning, I will instruct said company to buy in said contracts on the opening of the market and shall hold your company for the loss sustained.

"Yours very truly,      J. A. Erhard."

Having received no acknowledgment, reply to, nor recognition of such notice from the appellant company, and to protect himself, Erhard did on Monday, October 25, 1920, direct his brokers at New Orleans to buy 500 bales for January delivery to cover the sales made by them on Saturday previous under the bogus telegram. The market had gone up and the result was that Hyman & Co., acting for Erhard, lost in the transaction $2,234.80, the amount sued for.

Plaintiff, appellee here, alleged negligence of appellant in sending or permitting to be sent over its wires the bogus or unauthorized message, the execution of the cotton contracts by reason thereof, and damages in said amount as the result. Appellant, in addition to its exceptions, defended on the following grounds: (1) That the sale of the cotton was for January delivery, and had same been carried until January there would have been no loss, but a gain instead, as cotton was lower all during January, 1921, than on October 23, 1920; (2) that appellant acted with due care and diligence in receiving and transmitting the message; (3) that such message was an unrepeated interstate message, governed by federal law which restricted the amount recoverable to 50 times the sum received for sending it; and (4) that, even if said original telegram was bogus, appellee ratified and adopted it by his telegram of Monday, October 25th, directing his brokers to "buy to cover" the 500 bales sold under the bogus telegram.

This case was submitted to a jury on special issues on all of which they found in favor of plaintiff and against the telegraph company. Based upon such findings the court rendered judgment in plaintiff's favor for the amount sued for; from which this appeal is prosecuted.

## Opinion.

[1] The first five assignments of error made by appellant, though raised in different ways, all pertain to the defense that the sale for appellee's account of the 500 bales of cotton in question, even though unauthorized, was for delivery in January, 1921, all during which month this cotton could have been bought in the open market for a much less price than it was actually sold for, and that there should have been no loss to appellee. Appellant insists that in the sale of personal property the measure of damages is the difference between the contract price and the market value at the time and place of delivery, citing authorities. This rule as to the measure of damages in such case is established beyond controversy, but it cannot apply in the instant case. Plaintiff's suit was not based upon contract, and he sought no relief under the contracts made by his brokers, Alex Hyman & Co. His suit was for damages for negligence of appellants in sending a bogus or forged message over its wires directing his brokers to make contracts in his name, and resulting in the losses complained of. It was an action in tort, not for breach of contract, and appellant's contention and its defenses urged are, therefore, not applicable. Its assignments on this point must then be overruled.

Assignments 6 to 10, inclusive, have been abandoned by appellant, and we are not called upon to consider them.

[2] Assignments 11, 12, 13, and 16 are predicated upon appellant's contention that in sending the message to his brokers, Hyman & Co., on Monday, October 25, 1920, to "buy to cover" the sale of Saturday preceding, Er-

hard, with full knowledge of the bogus telegram, thereby ratified the contracts made by his brokers under it and made them his own. We find no merit in this contention. Erhard, upon learning of the bogus message immediately repudiated it. On Sunday he notified appellant that it must stand the loss occasioned thereby. It is not denied that appellant knew the rules of the cotton exchange requiring contracts for future delivery of cotton to be "margined" by deposit òf additional money to guarantee their performance, in case the market price of cotton advanced.

It is not denied that Erhard was not bound by the bogus telegram, and that the contracts made in his name were not binding upon him. But his agents, Hyman & Co., were liable on the contracts, and had notified him that they were holding him responsible under them. Rather than jeopardize his standing on the Cotton Exchange by refusing to perform contracts made by his brokers in his name, and rather than risk loss in the matter, Erhard sent the telegram on Monday, after appellant had ignored his notice of the day before. We think it is immaterial whether Hyman & Co. could have held Erhard legally liable for the loss sustained. When notified that the telegram was bogus, Hyman & Co. were entitled to relieve themselves of the contracts made by reason of appellant's negligence in sending the message, and would have been authorized to do the very thing Erhard wired them to do without any message from him. The damages flowing from appellant's negligence would have been the same in either instance, and, since the appellee holds by assignment their cause of action, appellant cannot complain.

We think it is clear that in sending the message on Monday the appellee was only seeking, as he testified, to minimize his loss, and in no sense adopting or ratifying the unauthorized telegram of Saturday. This issue was submitted to the jury, and they found against appellant. The evidence is sufficient to support their finding.

[3] Assignments 14 and 15 relate to the proposition that having ratified and adopted the bogus message, and it being an interstate message appellee is limited under federal laws and the rules of the Interstate Commerce Commission to a recovery of the amount charged for sending an unrepeated message. There is no merit in these assignments. Appellee neither adopted nor ratified such message, and the federal laws and rulings of the Interstate Commerce Commission as to recovery allowed, are not applicable to forged or bogus messages.

[4] Appellant's seventeenth and eighteenth assignments assert error of the trial court in submitting to the jury special issues Nos. 3 and 4. These issues submitted to the jury were as to the amount of the damages, if any, sustained by Hyman & Co. as the result of appellant's negligence in sending the unauthorized message, and as to whether or not such damages were the direct and proximate result of the unauthorized sending of said telegram. This was not error. The issues raised by the pleadings were fairly submitted to the jury, which found appellant guilty of negligence in sending the bogus telegram. There was ample evidence to sustain this finding. That being true, Hyman & Co. were entitled to recover such damages as were the direct and proximate result of such negligence.

[5, 6] Appellant's nineteenth and last assignment of error is that the jury's answers to special issues 1 and 5 are without evidence to support them, and that they should therefore have been set aside by the trial court on motion for a new trial. Issue No. 1 was whether or not appellant's operators exercised ordinary care and prudence in sending the bogus telegram and without having reasonable cause to believe that said message was forged. Issue No. 5 was whether or not the Dallas operator under the facts shown exercised ordinary care in transmitting said message without having first made inquiry as to its genuineness. On both of these issues the jury found against appellant. These were matters of fact for the determination of the jury and we are not authorized to disturb their findings unless against the overwhelming preponderance of the evidence or clearly influenced by passion or prejudice. Without discussing the evidence it is sufficient to say that we think it amply sufficient to sustain the findings of the jury. Appellant's assignment is, therefore, overruled.

Finding no error in the record the judgment of the trial court is affirmed.

Affirmed.