WILLIAM ARTHUR WISE *v.* THE WESTERN UNION TELEGRAPH COMPANY, a corporation of New York.

156

(*April* 26, 1934.)

RODNEY, J., sitting.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for plaintiff.

*William S. Potter* (of Ward and Gray) for defendant.

Superior Court for New Castle County, No. 34, November Term, 1932.

158

RODNEY, J., delivering the opinion of the Court:

It is conceded that this case is one of first impression and there is some suggestion in the briefs that the acknowledged novelty of the action may be a limitation upon the right to maintain it.

I am of the opinion that the correct answer to the suggestion lies in a determination of whether the term "novelty" applies to the legal principle forming the basis of the action or whether the legal basis being recognized, the "novelty" has application merely to the method by which the principle is enforced. If there be no known legal principle upon which an action can be based, a Law Court may be powerless to grant relief without legislative intervention, but the basic right of action being established, the law does not allow the remedy to fail even though the established principle must be applied to new situations. Novelty of application is no reason to deny relief. *Kujek v. Goldman,* 150 *N. Y.* 176, 44 *N. E.* 773, 34 *L. R. A.* 156, 55 *Am. St. Rep.* 670; *Habeeb v. Daas,* 111 *Misc.* 437, 181 *N. Y. S.* 392; *Harris v. Nashville Trust Co.,* 128 *Tenn.* 573, 162 *S. W.* 584, 49 *L. R. A.* (*N. S.*) 897, *Ann. Cas.* 1914C, 885; *Harrison v. Berkley,* 1 *Strob.* (*S. C.*) 525, 47 *Am. Dec.* 578.

 This was, substantially, the origin of the action of Trespass on the Case. It would, of course, be a vain and presumptuous task for me to attempt to add to the legal learning concerning the development of the Action of Case. It is sufficient to observe that it has kept legal remedies measurably abreast with expanding views of legal rights and forms the great residuary remedy in the field of Tort as *Indebitatus Assumpsit* does in the field of Contract. 3 *Street, Foundations of Legal Liability*, 246. Case lies to recover damage incurred by reason of any act done or permitted or omitted to be done contrary to the obligation of the law. Comyn says:

"In all cases where a man has a temporal loss or damage by the wrong of another he may have an action upon the Case to be repaired in damages."

Succinctly, therefore, where there exists a legal right on one side and a legal wrong on the other, accompanied by damage, the action of Case will furnish a remedy where no specific remedy exists.

With these general observations I may approach the facts of the particular case.

The discovery and development of the scientific principles upon which the telegram is based brought in its wake many new legal problems involving the relationship and liability of the transmitting company to the sender and addressee of the telegram and, as to some of these, and especially the liability to the addressee, the legal thought of England and America radically differs.

Avoiding these questions, as not here involved, we pass directly to the liability of the company in cases of false, forged or fraudulent telegrams. A consideration of these situations naturally divides into two classes depending on the originator of the forged or fraudulent telegram:

First. Where the telegram is forged by a third person.

Second. Where the telegram is forged by the company itself or its agent.

It is obvious that we are not concerned with the first class and the authorities generally hold that the liability of the company bears a relationship to the degree of care or negligence exercised in the acceptance of the forged telegram. *Bank of Havelock v. W. U. Tel. Co.* (*C. C. A.*), 141 *F*. 522, 4 *L. R. A.* (*N. S.*) 181, 5 *Ann. Cas.* 515; *Western Union Tel. Co. v. Uvalde Nat. Bank,* 97 *Tex.* 219, 77 *S. W.* 603, 65 *L. R. A.* 805, 1 *Ann. Cas.* 573; *Bank of Palo Alto v. Pacific Postal Tel. Co.* (*C. C. A.*), 103 *F*. 841; *Id.* (*C. C. A.*), 109 *F*. 369, 54 *L. R. A.* 711; *Western Union Tel. Co. v. First St. Bank* (*Tex. Civ. App.*), 241 *S. W.* 789; *Id.* (*Tex. Civ. App.*), 258 *S. W.* 591; *Mackay Tel., etc., Co. v. Erhard* (*Tex. Civ. App.*), 264 *S. W.* 570; *Western Union Tel. Co. v. Citizens' Bank of Harrison,* 144 *Ark.* 577, 223 *S. W.* 29, 10 *A. L. R.* 822 and *note page* 828.

Second. A telegram forged by the company itself or its agent may give rise to a claim in at least three instances:

(a) At the instance of an addressee where such addressee relying upon the truth of the telegram acted to his disadvantage;

(b) At the instance of a third party, a stranger to the telegram;

(c) At the instance of that party whose name was forged, where such forgery was the proximate cause of an injury.

In this latter class the present case is found.

(a) While the present case is not brought by an "addressee" yet the cases falling in that category are relevant for consideration by analogy, in view of the lack of the exact authority under class (c).

The claim of an addressee for damages as a result of a receipt of a telegram forged by the company or its agent

is not based on a contract between the company and the addressee, nor can any supposed agency exist between the addressee and the fictitious sender. The claim is purely in tort, based upon the false representation arising from the delivery of the telegram. A telegraph company upon delivering a telegram must in reason be taken to represent to the recipient that it received that message at the point whence it purports to come and that the message was directed to him. 1 *Street, Foundation of Legal Liability,* 454.

Under certain circumstances, a telegraph company is under a duty to inquire as to the validity of a telegram when forged by a third party. If this be true, and if the company be liable for its negligence in failing to exercise the proper care, then there must be a corresponding and a stronger duty not to commit the forgery itself and a corresponding liability for damages flowing from an intentional fraud. *Usher v. W. U. Tel. Co.,* 122 *Mo. App.* 98, 98 *S. W.* 84. Actions by addressees where telegrams were forged by the agents of the company have been sustained in *McCord v. W. U. Tel. Co.,* 39 *Minn.* 181, 39 *N. W.* 315, 1 *L. R. A.* 143, 12 *Am. St. Rep.* 636; *Postal Tel. & Cable Co. v. Traders' St. Bank (Tex. Civ. App.),* 150 *S. W.* 745.

(b) There are cases which deny the liability of a telegraph company for damages resulting · from a forged telegram when sued by a third party who was neither sender nor addressee. *Usher v. W. U. Tel. Co.,* 122 *Mo. App.* 98, 98 *S. W.* 84; *Western Union Tel. Co. v. Schriver (C. C. A.),* 141 *F.* 538, 4 *L. R. A.* (*N. S.*) 678. These were determined largely on the theory that the company owes no duty to an entire stranger to the telegram. The *Schriver Case, supra,* was discontinued before final judgment, the claim assigned and suit brought by assignee in the State Court as *Wells v. W. U. Tel. Co.,* 144 *Iowa* 605, 123 *N. W.* 371, 24 *L. R. A.* (*N. S.*) 1045, 138 *Am. St. Rep.* 317. This

case repudiated the doctrine of the Federal Court of Appeals and sustained a verdict for the plaintiff.

(c) I now come to a consideration of the precise question here involved.

The plaintiff is the person whose name is alleged to have been forged by the agent of the company and he is the only person damaged by the act.

The only pertinent case disclosed by the excellent briefs, or by an exhaustive independent research, is *Magouirk v. W. U. Tel. Co.*, 79 *Miss.* 632, 31 *So.* 206, 207, 89 *Am. St. Rep.* 663. The case is short and unsatisfactory, there being no discussion of the principles involved. There an agent for the telegraph company formulated and sent the following message:

"Be sure to go to Heidelberg. Am on excursion."

To this message he forged the plaintiff's name. The plaintiff was an unmarried woman and the addressee an unmarried man, with whom she had but a slight acquaintance. The agent, after sending the telegram, publicly boasted of it and showed the contents to the public. The plaintiff sued for damages to her reputation.

While the cited case has some similarity upon the facts to the instant case, yet if the questions here raised were considered by the Mississippi Court, the report does not disclose such fact.

It is difficult to see why the present plaintiff may not recover.

Passing, for the moment, the question of the liability of the company for the act of the agent and whether it was within the scope of his employment, we have the following facts:

The plaintiff was engaged in a lawful business and had built up a clientele through the use of the telegrams of the defendant company. The agent of the defendant,

utilizing his knowledge of the plaintiff's business and of the names of his clients, forged the telegram and delivered it to one of the clients and the alleged injury to the plaintiff followed.

It is contended that the declaration does not charge the defendant with a violation of any duty owed by the defendant to the plaintiff. It is not essential that such duty be alleged in precise terms. If the facts stated raise the duty, the express allegation is unnecessary. *Edmanson v. W. & P. Trac. Co.*, 2 *W. W. Harr.* (32 *Del.*) 177, 120 *A.* 923.

Duties, of course, may be positive or negative; direct or indirect. The duty may be to do a certain act or to abstain from a course of conduct and as there is a duty to avoid harm, so there is a co-relative duty to abstain from doing wilful harm. *Pollock on Torts*, 21.

Two of the three great main heads of duty with which the law of torts is concerned are:

(1) The duty to abstain from wilful injury; and

(2) The duty to respect the property of others.

Both may have application to this case. Considered in connection with other principles of law, hereinafter discussed, a spurious and fraudulent telegram may constitute a wilful injury and business relationships may constitute property, an injury to which may be actionable.

It must also be borne in mind that the majority of the cases sustaining actions by an "addressee" against the telegraph company proceed upon the theory that such company is a public service corporation, owing duties to the general public, and liable to any member of that public, to whom it owes a duty, for damages proximately flowing from violation of such duty. 26 *R. C. L.* 588. See *Liability of Telegraph Companies by Morris Wolf*, 42 *Am. Law Register*

(*N. S.*) *Dec.* 1903, *page* 715, at 727. In this monograph it is shown that the telegraph company is not only liable in tort to the addressee but to the sender or any member of the public who may be injured by the wrong of the company.

The plaintiff, in the conduct of his business over the lines of the defendant, used the name "Watchman" as, a signature for telegrams. The defendant knew of this course of conduct and its agent forged the name "Watchman." The effect was the same as if the Christian name of the plaintiff had been forged. The defendant's employee, as a consequence of his employment, knew the nature of the plaintiff's business; he knew the clients of the plaintiff and that those clients in response to telegrams from the plaintiff forwarded money to him. With this knowledge, he forged the plaintiff's name to the telegram, delivered it to the client, and received the money from the client which was intended by the client to be forwarded to the plaintiff. The declaration then alleges that as a consequence of the wrong, the reputation, good name and business of the plaintiff was injured.

█ I am of the opinion that a cause of action is shown to exist in the plaintiff, the liability of this particular defendant being dependent upon the application of the doctrines of Respondeat Superior and Proximate Cause to be hereinafter considered.

█ Because the plaintiff may have a cause of action, it does not necessarily follow that liability may attach to the present defendant. Whether this liability exists depends upon the responsibility of the defendant company for the act of its agent, Boyer, with respect to his action in this particular transaction.

Passing, for the moment, the question of whether the representation set out in the telegram was the proximate cause of the injury or whether this injury resulted from

the action of Sasher, the addressee, in spreading reports to the detriment of the plaintiff, the question first presented is whether the action of Boyer, the agent, was within the scope of his authority so as to render the principal or master liable. Closely related to this question is the cognate inquiry as to the reliance which Sasher could legally place in the telegram delivered to him by Boyer.

The defendant plausibly argues that the principal is not liable for the agent's fraud not committed for the master's benefit; that the master is not civilly liable for the crime of the agent and that the action of the agent not being within the scope of his authority, the principal could not be liable even though the employment furnished the opportunity for the wrong doing.

For these views the defendant cites *Copelin v. Berlin Dye Works, etc., Co.,* 168 *Cal.* 715, 144 *P.* 961, *L. R. A.* 1915*C,* 712; *Walsh v. Hunt,* 120 *Cal.* 47, 52 *P.* 115, 39 *L. R. A.* 697; *Knoxville Nat. Bank v. Clark,* 51 *Iowa* 264, 1 *N. W.* 491, 33 *Am. Rep.* 129; *Fairbanks v. Boston Stor. Warehouse Co.,* 189 *Mass.* 419, 75 *N. E.* 737, 13 *L. R. A.* (*N. S.*) 422, 109 *Am. St. Rep.* 646; *Case v. Steel Coal Co.,* 162 *Ky.* 68, 171 *S. W.* 993, *L. R. A.* 1915*D,* 867; *Southern Railway Co. v. Chambers,* 126 *Ga.* 404, 55 *S. E.* 37, 7 *L. R. A.* (*N. S.*) 926; *Bryan v. Fairfax Forest, etc., Co.,* 89 *W. Va.* 314, 109 *S. E.* 323.

The foregoing authorities may be the correct solution of the factual situations there involved, but they cannot control the present case.

Here the question is the liability of the principal for the act of Boyer in forging and delivering a telegram and the reliance the addressee could place in its authenticity. It must be remembered that the delivery of a telegram was something Boyer's employment contemplated and was an act which would have been lawful if it had been honest. We are not without direct authorities upon the precise point.

In *McCord v. W. U. Tel. Co.*, 39 *Minn.* 181, 39 *N. W.* 315, 317, 1 *L. R. A.* 143, 12 *Am. St. Rep.* 636, it is said:

"The defendant selected its agent, placed him in charge of its business at the station in question, and authorized him to send messages over its line. Persons receiving dispatches in the usual course of business, when there is nothing to excite suspicion, are entitled to rely upon the presumption that the agents intrusted with the performance of the business of the company have faithfully and honestly discharged the duty owed by it to its patrons, and that they would not knowingly send a false or forged message, and it would ordinarily be an unreasonable and impracticable rule to require the receiver of a dispatch to investigate the question of the integrity and fidelity of the defendant's agents in the performance of their duties before acting. Whether the agent is unfaithful to his trust, or violates his duty to, or disobeys the instructions of, the company, its patrons may have no means of knowing. If the corporation fails in the performance of its duty through the neglect or fraud of the agent whom it has delegated to perform it, the master is responsible."

In *Postal Tel. & Cable Co. v. Traders' St. Bank* (*Tex. Civ. App.*), 150 *S. W.* 745, 746, the Court said:

"When the telegram was delivered * * * it carried with such delivery a representation upon the part of appellant that it had been received in due course over its wires from New York, and appellee was authorized to act on the assurance of its genuineness, and no duty devolved upon it to exercise diligence to ascertain if the telegram had really been sent from New York. That duty rested on appellant, and it was guilty of perpetrating a fraud when it allowed a telegram to leave its office which had been prepared in that office, and had never come over its wires. Appellee had no means of knowing that the telegram was spurious, and could act on the presumption that appellant was acting carefully in the discharge of its business."

See, also, 2 *Cooley Torts* (*3d Ed.*), *page* 1022; *Elwood v. Tel. Co.*, 45 *N. Y.* 549, 6 *Am. Rep.* 140; *Reynolds v. Witte*, 13 *S. C.* 5, 36 *Am. Rep.* 678; *Dougherty v. Wells, Fargo & Co.*, 7 *Nev.* 368, at *page* 373; *Bank of Palo Alto v. Pac. Postal Tel. Co.* (*C. C. A.*), 103 *F.* 841.

The theory of the *McCord* and *Postal Cases, supra,* in so far as the question now being considered is concerned, is not, as suggested by the defendant, that the company as a public utility had breached a duty in failing to employ reputable agents.

The true theory was that the public had a right to rely upon the action of the agents as being binding upon the company. This right exists not only upon the dual relationship of Boyer as dealing with both the company and the public but is affected by the status of the telegraph company as a public utility. 42 *Am. Law Reg.* (*N. S.*) 727, *supra.* As said in *Postal Tel. Co. v. Traders' St. Bank, supra,* fiduciary relations exist between the telegraph company and the general public and to hold that men cannot act on the assumption that telegrams delivered to them were duly received over the telegraph wires in the due prosecution of business would place a premium upon fraudulent neglect and materially disturb the business of the country.

If other authorities were lacking, it would be difficult to deny the application of the very latest authoritative statement.

In the *Amer. Law. Inst. Restatement of Law of Agency, Vol.* 1, § 261, it is said:

"A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons, is subject to liability to such third persons for the fraud."

*Section* 262 says:

"A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him under the rule stated in *Section* 261, is not relieved from liability by the fact that the apparent agent acts entirely for his own purposes, unless the other have notice of this."

These statements, together with the comments thereto annexed, seem conclusive of this case. If Sasher could not rely upon the authenticity of the telegram then he would be compelled to have it confirmed. In most communities there is but one office of a telegraph company. Application for confirmation would have to be made to the very party whose possible fraud was the subject of the inquiry.

I now come to the remaining question as to whether the representation set out in the telegram was the proximate cause of the injuries or whether this injury was caused by Sasher who is claimed to have been an independent intervening actor. I am not at all clear that this question should now receive my consideration.

Usually questions of proximate cause are questions of fact for the determination of the jury (*Island Exp. Co. v. Frederick*, 5 *W. W. Harr.* [35 *Del.*] 569, 171 *A.* 181), and only become questions of law when the minds of all reasonable men must draw the same conclusions.

The defendant contends there can here be no recovery and argues that the wrong, if any, of Boyer, the agent of the defendant, would do no more than furnish the condition or opportunity by which the injury was inflicted, and that in order to make the defendant liable the injury must be the natural and probable consequences of the wrong. The defendant cites *South-Side, etc., Ry. Co. v. Trich*, 117 *Pa.* 390, 11 *A.* 627, 2 *Am. St. Rep.* 672; *Hartnett v. Boston Store, etc.*, 265 *Ill.* 331, 106 *N. E.* 837, *L. R. A.* 1915C, 460; *Leavitt v. Bangor, etc., R. Co.*, 89 *Me.* 509, 36 *A.* 998, 36 *L. R. A.* 382; *Winfree v. Jones*, 104 *Va.* 39, 51 *S. E.* 153, 1 *L. R. A.* (*N. S.*) 201.

The defendant must contend:

(1) That the injury was occasioned by an intervening cause which became the proximate cause; and

(2) That the intervening cause was an independent one not set in motion by the original wrongdoer.

To have the effect of replacing or supplanting the original wrong:

"The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result. * * * The test is: Was the intervening efficient cause a new and independent force,

acting in and of itself in causing the injury and superseding the original wrong complained of, so as to make it remote in the chain of causation." 22 *R. C. L.* 133.

The same authority at *page* 134 says:

"The general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer."

See, also, 1 *Thompson on Negligence,* § 52; 1 *Cooley on Torts* (4th *Ed.*), § 50; *Seith v. Commonwealth Elect. Co.,* 241 *Ill.* 252, 89 *N. E.* 425, 24 *L. R. A.* (*N. S.*) 978, 132 *Am. St. Rep.* 204; *Hammil v. Pennsylvania R. R. Co.,* 56 *N. J. Law* 370, 29 *A.* 151, 24 *L. R. A.* 531; *Philpot v. Taylor,* 75 *Ill.* 309, 20 *Am. Rep.* 241.

It would be difficult to hold, as a matter of law, that Sasher was an independent intervening cause and that the ultimate injury was due to his action. Sasher was the addressee of the forged telegram; the telegram induced him to action; he paid out money on the strength of the telegram and expected information in return for the money laid out by him. It would show a surprising lack of knowledge of human nature not to expect some repercussion, some action or reaction on the part of Sasher when he found his money gone and no information furnished to him and no explanation.

It is conceivable that when Sasher found himself defrauded he would have communicated with or confronted the plaintiff, his supposed correspondent and demanded the return of his money and an explanation. On the other hand, it is also conceivable that upon receipt of the telegram, Sasher would, as alleged in the declaration, have shown the telegram to other people and have subsequently taken a course of action tending to the disparagement of the good faith and business integrity of the plaintiff. Causation for the injury might depend upon the action of

Sasher and the reasonableness of this action cannot be a matter of law to be finally determined upon this demurrer to the declaration especially in view of the ordinary rule that questions of proximate cause are questions for the jury.

Then, too, whatever action Sasher took had been set in motion by the receipt of the telegram and this delivery of the telegram constituted the initial wrong. The intervening cause, if any there was, was set in motion by the original wrongdoer and when this happens, as we have seen, the rule is that the intermediate cause does not become such an independent, intervening cause as will act as a "non-conductor" and "insulate" the prior wrong.

The demurrer must be overruled.